Garner D. WILLEY, d/b/a Willey Engineering Company, Appellant,

v.

TERRY & WRIGHT OF KENTUCKY, INC., and Globe Indemnity Company, Appellees.

GLOBE INDEMNITY COMPANY, Appellant,

v.

TERRY & WRIGHT OF KENTUCKY, INC., Appellee.

Court of Appeals of Kentucky.

Nov. 24, 1967.

Morris B. Borowitz, Louisville, for appellant Garner D. Willey d/b/a Willey Engineering Co.

John P. Sandidge, Woodward, Hobson & Fulton, Louisville, for appellee, Terry & Wright of Kentucky, Inc.

Armer H. Mahan, Davis & Mahan, Louisville, for appellant-appellee, Globe Indemnity Co.

CULLEN, Commissioner.

Terry & Wright of Kentucky, Inc., which was the principal contractor on a sewer construction project, recovered a judgment for $9,124.21 against Garner D. Willey, d/b/a Willey Engineering Company, who was a subcontractor on the project, and against Globe Indemnity Company, which was surety on Willey's performance bond. Willey and Globe Indemnity Company have appealed.

A motion to dismiss the appeals, which was passed to the merits, hereby is overruled. Since we are affirming the judgment we find it unnecessary to discuss the grounds of the motion. A motion for an oral argument also is hereby overruled.

Terry & Wright had a contract for a large sewer construction project. They subcontracted part of the work, on an area basis, to Willey, and part to Anchor Construction Company. The subcontract between Terry & Wright and Willey provided that Terry & Wright would pay for all labor and materials used by Willey, but would be given credit for the amounts so paid against the compensation payable to Willey, which was to be 89 percent of the principal contract price for the portion of the work allocated to Willey. In this regard the subcontract contained the following provisions

(which furnish the crux of the controversy in this action):

"All material and labor for which FIRST PARTY takes credit hereunder, on amounts due SECOND PARTY, shall have the prior written approval of SECOND PARTY. The signature of Mr. Willey, or a representative of him, on the payroll and delivery tickets shall constitute approval in writing."

It turned out that the amount of compensation payable to Willey came to only $25,189.39, whereas the amount claimed to have been expended by Terry & Wright for labor and materials was $34,313.60, thus leaving a net loss of $9,124.21 on the subcontracted work. The amount of this loss is what Terry & Wright sued for and recovered.

Of the amount of $34,313.60 for which Terry & Wright claimed credit, $7,740.36 was for items which had not been approved in writing by Willey. It was and is Willey's contention that he cannot be charged for those items, wherefore he should be held liable only for $2,149.78 (the balance after subtracting $7,740.36 from $9,124.21). He argues that under the plain, clear terms of the subcontract his written approval was necessary for each item sought to be charged against him.

Proof was heard by a commissioner. It showed that during the nine-month period of the work Terry & Wright submitted to Willey weekly statements of payrolls and monthly statements of materials used on Willey's portion of the project, the statements being itemized in detail and accompanied with copies of invoices. Willey at no time during this period raised any objection to any item or to the method of submitting statements. The proof indicated that a number of the invoices for materials on which Willey had not endorsed his written approval were invoices that the supplier had charged and sent directly to Willey and which he had brought to Terry & Wright for payment. Other unapproved invoices

were for materials that had been purchased for another part of the project but which in the exigencies of the work were used in Willey's area.

The commissioner found that under the practical construction the parties themselves had placed upon their contract a strict compliance with the clauses relating to written approval was not intended, and the submission of the weekly and monthly detailed statements was substantial compliance. The chancellor adopted the commissioner's findings, and held that since Willey during the course of the work had raised no question as to the correctness of the charges contained in the statements furnished him, the charges must be considered to have been properly made.

In our opinion the chancellor reached the right result. We think that the parties by their course of dealing abrogated the written approval clause. It makes no difference what name we apply to the theory on which we reach this conclusion, whether it be contemporaneous construction, waiver, estoppel, novation, or what have you. The theory simply is that by their course of dealing the parties showed that they did not intend the written approval clause to be strictly observed.

The situation we have here is comparable, we think, to that in which a building or construction contract has provided that no alterations or extras will be paid for without written order. Under such contracts the courts have held the owner liable for alterations or extras made without his written order, where he orally agreed to or acquiesced in them. See 13 Am.Jur., 2d, Building and Construction Contracts, sec. 24, pp. 26, 27; Annotation, 66 A.L.R. 649; Illinois C. R. Co. v. Manion, 113 Ky. 7, 67 S.W. 40.

Authority for our position also is found in Trapp v. Conley, Ky., 89 S.W.2d 514, and Jones v. Linkes, Ky., 267 S.W.2d 936, in each of which cases the court held that a

contract would be enforced in accordance with the practical construction placed upon it by the parties.

The judgments are affirmed.

All concur.