Gary **EDMONDSON** and Edmondson,
Condit & Calvert, a Partnership,
Appellants,

v.

**PENNSYLVANIA NATIONAL MUTUAL
CASUALTY INSURANCE
COMPANY, Appellee.**

No. 88–SC–1008–DG.

Supreme Court of Kentucky.

Dec. 21, 1989.

Edward H. Stopher, Raymond G. Smith, Louisville, for appellants.

Rodney S. Bryson, Covington, for appellee.

LEIBSON, Justice.

On November 5, 1983, Millie's Drapery Shop in Covington, Kentucky, was partially destroyed by a fire. Millie Raines, the owner, insured her drapery business in a policy with Pennsylvania National Mutual Casualty Insurance Company ("Pennsylvania National"). She retained her longtime attorney, Gary Edmondson of Edmondson, Condit & Calvert ("Edmondson") to handle her insurance claim.

As usual, the policy listed "Conditions Applicable To" coverage, including:

"15. Suit. No suit shall be brought on this policy unless the insured has complied with all the policy provisions and has commenced the suit within one year after the loss occurs."

After preliminary negotiations between Edmondson and Pennsylvania National, including a demand for a much higher figure, on May 30, 1984, Pennsylvania National wrote a letter to Edmondson stating, in pertinent part:

"This will also acknowledge the completed Proof of Loss forms,.... We are accepting these Proof of Losses, (3), in compliance with the policy conditions concerning the filing of the Proof of Loss. However, we expressly reject any and all statements contained in the said Proof of Losses, (3), with reference to

the amount of sound value and the amount of loss. We expressly reserve all of our rights and defenses in connection with ascertainment as to the value and loss, if any, and we do not in any way, in acknowledging the receipt of this Proof of Loss, Waive any of the rights and Defenses which the Pennsylvania National Mutual Casualty Insurance Company possesses under its Policy # 515 03 6556-4."

Attached to this letter was a copy of a so-called "Statement of Loss," "outlining the loss and claim on the building" as the Insurance Company perceived it. This itemization, after "depreciation and the deductible" had a bottom line of $17,258.70. The letter continues:

"We are authorized to make a settlement on the Insureds claim for $17,258.70. We attach a Proof of Loss in this amount. If agreed upon, please have the Insured sign the Proof of Loss and have her signature notarized...."

The only response to this letter was a telephone call from Edmondson to the adjuster asking for a separation of damages; he was told to put his request in writing. The next correspondence was a letter from the adjuster to Edmondson, dated November 2, 1984, referring to the previous "offer to settle all claims in the total and net amount of $17,258.70," and then stating:

"Please be advised that the amount offered of $17,258.70, is the amount recognized as the extent of the Companies liability to your client,.... Any amount alleged or claimed in excess of the above amount is hereby totally rejected.

The Company requires full compliance with all terms and conditions of the policy. The Company reserves all rights and defenses of any and all nature that may be afforded under the terms and conditions of the contract."

There was no response from Edmondson until April 25, 1985, when Edmondson wrote a letter to the adjuster acknowledging the letter of November 2, 1984, and stating:

"[P]lease be advised that my client has agreed to settle for the $17,258.70."

Because the anniversary date of the loss had passed without settlement or suit, Pennsylvania National took the position it was no longer obligated to pay anything, and made no reply. Edmondson wrote a follow-up letter, and then, on June 27, 1985, the Home Office Claims Manager responded by referring Edmondson to "condition #15 of the policy," stating that since it "has not been complied with, our file remains closed."

The insured, Millie Raines, thereupon employed a second attorney, and on November 5, 1985, she filed suit against Gary Edmondson, her former attorney, and his law firm, alleging he was responsible for her loss because he negligently permitted her action to become time barred by the period of limitation set out in the terms of her insurance policy. The defendants filed a Third Party Complaint against Pennsylvania National alleging the insurance carrier was obligated to cover the loss under its insurance policy, and, at the least, obligated to the extent of $17,258.70 because the offer was "never withdrawn or revoked" and was accepted by the letter dated April 25, 1985. The defendants, Edmondson and his law partners, then settled with Millie Raines by paying her loss in that amount, and moved for Summary Judgment on their claim for indemnification against Pennsylvania National.

The trial court sustained the Motion for Summary Judgment, holding that "the one-year clause operated to prevent plaintiff Raines from seeking any amount from Pennsylvania National in excess of the offered $17,258.70.... [H]owever, that expiration of the one-year did not entitle Pennsylvania National to refuse to pay this stated amount for which it already had conceded its liability."

The Court of Appeals reversed the Summary Judgment on procedural grounds, holding that "[i]t could very well be said that Penn National waived its protection under paragraph 15 when it admitted liability and offered to pay," but "Edmondson did not plead waiver or estoppel, thus we are left to consider only whether acceptance of Penn National's offer was made within one year."

We have accepted Discretionary Review, and, although we would reverse the Court of Appeals' holding that there was a fatal procedural defect, we agree with Pennsylvania National's position on the underlying substantive issue. Pennsylvania National has steadfastly maintained in its Answer, and throughout, that "any offer to settle ... was conditioned upon the acceptance of said offer within the terms and conditions of the insurance contract as explicitly set out, and that no acceptance of any kind was received from or on behalf of Ms. Raines by Mr. Edmondson or anyone else within the time allotted under the provisions of the contract of insurance." The issue here is whether under principles of waiver or estoppel the insurance carrier is precluded from asserting the contract period of limitations. We hold that in the circumstances of this case, it is not.

■ Waiver and estoppel, as applied to contracts of insurance, are terms often used interchangeably, but this obscures their meaning. As stated in Long, *The Law of Liability Insurance*, Sec. 17.14:

"Although the terms are misused and interchanged, there truly is a clear distinction between them. Waiver is bottomed on a voluntary and intentional relinquishment of a known, existing right or power under the terms of an insurance contract. It is the expression of an intent not to insist upon what the law affords. The intention may be inferred from conduct and knowledge and may be actual or constructive, but both intent and knowledge are essential elements of waiver....

Estoppel gives no effect to a presumed intention, but defeats inequitable conduct. It offsets misleading conduct, acts, or representations which have induced a person entitled to rely thereon to change his position to his detriment."

■ Thus, it is textbook law that a waiver must be intentional. It is quite evident from the correspondence on the behalf of the insurer that it did not intend to waive its contract limitations period of one year. In both letters extending offers of settlement, that of May 30, 1984 and November 2, 1984, the insurer is careful to specify that it expressly reserves all rights and defenses, waives no such rights and defenses as it possesses under its policy, and requires full compliance with all terms and conditions of the policy. It is quite evident that the insurer was aware suit on the claim would be time barred one year from the anniversary date of the loss and intended to retain the right to insist on that condition, although it may well be that the insured's attorney was uninformed on this matter. As stated in Long's textbook, *supra*, Sec. 17.04:

"The insurer may clearly waive policy provisions inserted for its benefit, but only where it can be shown that the waiver was the knowing and intentional relinquishment of its policy rights."

In the insurer's letters to the insured's attorney, the insurer was being super careful to explicitly include language specifying that in making an offer to pay it intended no waiver of the conditions or defenses that the policy provided.

KRS 304.14–280 provides an itemized list of "acts by or on behalf of an insurer" which shall not "be deemed to constitute a waiver," which include:

"(3) Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim."

We have previously recognized the validity of insurance contract provisions requiring as a condition to sue that the action must be "commenced within the time specified by the policy." *Stansbury v. Smith,* Ky., 424 S.W.2d 571, 572 (1968). *See also Webb v. Ky. Farm Bureau Ins. Co.*, Ky. App., 577 S.W.2d 17 (1978), and cases cited therein. Thus, there is no question in this case as to the validity of the limitation provided in the conditions of the policy, nor that there was any statements or acts on behalf of the insurer evidencing an intention to waive the policy terms.

■ The crux of the argument by Edmondson is found in the reasoning of the trial court that as to the sum of $17,258.70 the insurer "already had conceded its liability." This is an argument addressed to the principle of estoppel, not waiver. The mere fact that liability is not an issue, does not, per se, convert an offer of settlement into a binding contract for the amount of the offer. The viability of an offer is conditioned upon acceptance pursuant to its terms. Here, the offer of settlement, twice made, required the insured to submit a Proof of Loss specifying she would accept payment in the amount stipulated. The offers contemplated a general release, and incorporated by reference the terms and conditions of the policy. This is not an unconditional admission of liability but an admission of coverage limited by the provisions in the policy. It expressly reserves the policy conditions and defenses. It requires accepting the offer of settlement according to its terms. Regardless of whether coverage is disputed or admitted, an offer of settlement is just that. Absent estoppel there is no contract principle, in insurance law or otherwise, converting an offer of settlement into a binding contract unless and until it is accepted in accordance with its terms.

Here the terms of both letters, including the last one mailed only three days before the anniversary date which triggers the time bar, continued to incorporate this time bar condition of the insuring agreement. The appellee, Edmondson, has cited cases from other jurisdiction which he offers in support of the premise that a waiver occurs in present circumstances, but the language in the cases uses "waiver" where the principle involved was estoppel, and none of the cases fits squarely on the facts. For instance, Edmondson cites *Lee v. Safeco Insurance Company*, 144 Ga.App. 519, 241 S.E.2d 627 (1978), wherein the insurance

company was held to have made an unconditional promise to pay which was not time barred after the one-year policy period had expired. The court speaks to "waiver ... where the company leads the insured by its actions to rely on its promise to pay, express or implied." The term "leads" refers to "misleading conduct, acts, or representations which have induced a person entitled to rely thereon to change his position to his detriment." Long, *The Law of Liability Insurance, supra.* The term "waiver" as used in *Lee v. Safeco, supra,* is a misnomer because the principle involved was estoppel.

■ The facts and circumstances of the present case do not lend themselves to applying principles of estoppel. This is not the usual case wherein the insurer is dealing directly with its insured, who is in a trusting and dependent position. The Brief for Pennsylvania National acknowledges that in such circumstances only "slight acts" are necessary for estoppel to occur and the "law does not favor forfeitures." In the present case, the communications from the adjuster to the attorney, carefully phrased to reserve policy conditions and defenses but failing to specifically advise that the offer is terminated if neither settlement nor suit occurs within one-year, might well be grounds to argue the insurer mislead or induced the insured to sleep on his rights, had the insurer been dealing directly with the insured.

Such was not the case. On the contrary, the insured had employed an attorney-at-law who was engaged with the insurance company in an arms-length transaction. It was the attorney's responsibility to know as much as the insurance company about the terms and conditions of the policy which were incorporated by reference in the offer of settlement, and to understand the limitations inherent in the offer. The attorney was not misled by the correspondence, nor does he claim that he was. At oral argument he conceded that he was simply unaware of the time bar provision.

One of the cases Edmondson has cited is *Peoples State Bank v. Ohio Casualty In-*

*surance Company,* 96 N.M. 751, 635 P.2d 306, 307–08 (1981), stating:

> "The acts and conduct generally held to constitute a waiver [sic, estoppel] of a time-to-sue provision are those acts which would lull the insured into reasonably believing that its claim would be settled without suit [case cited], or which would render enforcement of a limitations defense unjust, inequitable or unconscionable."

We agree with this premise, taking note that it does not apply here because it refers to "acts which would lull the insured." Here the question is whether there were acts that induced a practicing attorney to be misled. The substance of the correspondence from the insurer to the insured's attorney in this case does not imply, unconditionally, that his client's claim would be settled without suit, unless, of course, he accepted the insurance company's offer before the anniversary date of the loss.

■ The Court of Appeals erred in reversing this case on a pleadings point. We agree with the appellants that the issue of waiver and estoppel was sufficiently presented in the trial court. It was first raised as an issue as an affirmative defense asserted by the insurance company in answer to the appellants' Third–Party Complaint, and under RC 7.01 and 8.04, no responsive pleading was required; such an affirmative defense "shall be taken as denied." However, when we then address the underlying substantive issues, we hold the Court of Appeals reached a correct result, reversing the case. The trial court erred in entering Summary Judgment for the appellants, Edmondson and his law partners. We vacate the Summary Judgment and remand this case to the trial court for further proceedings consistent with this Opinion.

STEPHENS, C.J., and GANT, LAMBERT, LEIBSON and WINTERSHEIMER, JJ., concur.

VANCE, J., dissents by separate opinion.

COMBS, J., not sitting.

VANCE, Justice, dissenting.

I fully agree with the majority that neither the principles of waiver nor estoppel is relevant to this case. Nevertheless, the appellant is entitled to recover, in my opinion, on the basis of an offer to settle the claim by the insurance company which was accepted by the policyholder.

There was never any dispute here about coverage of the loss by the policy. The only dispute was as to the amount of the loss. The company made an offer to settle the dispute, and the offer was not withdrawn, nor did it contain a time limit as to when it might be accepted. The offer was accepted. In my view, the offer and the acceptance of the offer constituted a contract binding upon the parties. Although the policyholder could not maintain the lawsuit upon the policy after the expiration of the time specified in the policy, I see no reason to bar a suit upon the contract.

The majority opinion tries to make the case that the one-year limitation for suit upon the policy also was a conditional limitation upon the right to accept the offer of settlement.

This is a strained interpretation of the offer for the benefit of the insurance company because there is no wording in the offer to settle which expressly states that the offer must be accepted within the one-year period. Such an intention can be reached only by implication from vague language about restrictions upon the policy, one of which was the unspecified one-year limitation.

If the insurance company had intended that this offer to settle would remain open only for one year from the date of loss, that fact should have been plainly and expressly stated as a condition of the offer, not merely concealed in some vague language which might or might not be apparent to one reading the offer.

This was admittedly a loss covered by a policy upon which the premium had been paid and which the company willingly offered to pay over $17,000 for the loss.

This court, by reading something into the language of the settlement offer which is not expressly stated, completely absolves the insurer of all liability. I would hold that the insurer made a valid offer to settle the dispute as to the amount of loss, that the offer to settle was accepted by the policyholder, and that a contract was thus created whereby the insurer bound itself to pay to the policyholder the sum agreed upon. I would further hold that a suit may be maintained to enforce that contract.