Corliss R. HOWARD, Appellant,

v.

MOTORISTS MUTUAL INSURANCE COMPANY; George H. Terry; Timothy W. Waxler; The Phoenix Insurance Company; Travelers Insurance Company; and Doctrow–Rich Insurance Company, Appellees.

No. 95–SC–944–DG.

Supreme Court of Kentucky.

June 19, 1997.

Rehearing Denied Dec. 18, 1997.

J.L. Richardson, IV, Richardson & Richardson, P.S.C., Louisville, for Appellant.

George R. Carter, William P. Swain, Boehl, Stopher & Graves, Louisville, for Motorists Mutual Insurance Company.

William Reeder Kenealy, Segal, Isenberg, Sales, Stewart, Cutler & Tillman, Louisville, for George H. Terry.

Gary M. Weiss, Weiss, Frederick & Haynes, Louisville, for Thimothy H. Waxler.

C.A. Dudley Shanks, Melissa Ann Stevens, Lisa M.P. Patrick, Segal & Shanks, Louisville, for Phoenix Insurance Company and Travelers Insurance Company.

Perry M. Bentley, J. Peter Cassidy, Jr., Todd S. Page, Stoll, Keenon & Park, L.L.P., Lexington, for Doctrow–Rich Insurance Company.

STUMBO, Justice.

Appellant, Corliss Howard, challenges a decision of the Court of Appeals reversing a Shelby Circuit Court judgment compelling Appellee, Motorists Mutual Insurance Company ("Motorists"), to provide insurance coverage for a 1991 auto accident. This opinion addresses whether estoppel or waiver can, under certain circumstances, preclude an insurance company from denying coverage after it has cashed an insured's check and retained the funds.

On April 29, 1989, Appellant contacted Appellee, Doctrow–Rich Insurance Agency ("Doctrow"), an independent insurance agency, to obtain automobile liability insurance. After an initial rejection, Motorists issued Appellant an insurance policy. Over the next year-and-a-half, Motorists continued to insure Appellant, even though she often sent in late payments and, in two instances, actually let her insurance lapse.

On December 17, 1990, Motorists sent Appellant a renewal billing statement indicating it would renew her auto insurance policy until July 19, 1991, if it received a renewal payment by January 18, 1991. Appellant did not forward a payment by the expiration date and, on January 29, 1991, Motorists sent Appellant a letter advising her to contact her agent to "discuss her insurance needs." Appellant did so, stopping by Doctrow's office on February 3. Doctrow did not accept Appellant's tendered payment on Motorists' behalf, as he had sometimes done in the past. Instead, the agent told her to forward the payment directly to Motorists. Appellant mailed a check for $126.94 to Motorists on February 5. Upon receipt on February 7, Motorists cashed the check, deposited Appellant's premium payment and issued her a receipt with policy number.

On February 19, 1991, pursuant to an internal policy regarding frequent policy lapses, an underwriter at Motorists sent a letter, along with a refund of Appellant's premium payment, to Doctrow. Doctrow received the notice and check on February 22 and forwarded it to Appellant that same day. Unfortunately, Appellant had an auto accident on February 22. The driver and passenger in the other vehicle, Appellees George Terry

and Timothy Waxler, sued Appellant. Motorists refused to extend coverage or defend Appellant in the action. As a result, Appellant filed a third-party complaint against both Motorists and Doctrow.

The Shelby Circuit Court entered summary judgment in favor of Appellant on the coverage issue, requiring Motorists to defend Appellant and provide coverage for any losses. Since Motorists had a duty to cover the loss, the trial court dismissed Appellant's action against Doctrow, the independent agent, as moot. Motorists appealed, and Appellant filed a cross-appeal regarding the dismissal of her action against Doctrow. The Court of Appeals reversed, rejecting Appellant's estoppel argument and holding that the cashing of Appellant's check did not create a contract of insurance. We granted Appellant's request for discretionary review and now reverse.

■ Citing past dealings between the two, Appellant contends that, by cashing her check and issuing her a receipt, the insurance company has either waived its right to deny coverage or is estopped from doing so. In response, Motorists contends that Appellant's policy had lapsed, and that under *Troutman v. Nationwide Mut. Ins. Co.*, Ky., 400 S.W.2d 215 (1966), the mere cashing of a premium check does not create a contract of insurance. After considering the arguments of both parties, under the peculiar facts of this case, we must agree with Appellant.

■ Because Appellant asserts a mixed bag of arguments implicating both waiver and estoppel, the case of *Edmondson v. Pennsylvania Nat'l Mut. Casualty Ins. Co.*, Ky., 781 S.W.2d 753 (1989), is instructive. "Waiver and estoppel, as applied to contracts of insurance, are terms often used interchangeably, but this obscures their meaning." *Id.* at 755. The two are separate and distinct concepts. Waiver, we have said, is "bottomed on a voluntary and intentional relinquishment of a known, existing right or power under the terms of an insurance contract." *Id.* (quoting Long, *The Law of Liability Insurance* § 17.14). After an internal review, Motorists refunded Appellant's premium. While Motorists' untimely refund of

Appellant's premium might be attributable to flawed procedures, we cannot characterize it as the kind of intentional act that establishes a waiver. Motorists did not intend to waive its right to refuse to renew Appellant's coverage, nor its right not to issue her a new policy. Instead, it is not unfair to say that Motorists simply failed to act. Thus, as defined by *Edmondson,* the doctrine of waiver does not apply here. If Appellant is to prevail, she must do so using estoppel.

▆ According to *Edmondson,* estoppel "offsets misleading conduct, acts, or representations which have induced a person to rely thereon to change his position to his detriment." *Id.* (quoting Long, *The Law of Liability Insurance* § 17.14). *Gray v. Jackson Purchase Credit Ass'n,* Ky.App., 691 S.W.2d 904 (1985), sets forth the elements of estoppel:

(1) Conduct, including acts, language and silence, amounting to a representation or concealment of material facts; (2) the estopped party is aware of these facts; (3) these facts are unknown to the other party; (4) the estopped party must act with the intention or expectation his conduct will be acted upon; and (5) the other party in fact relied upon this conduct to his detriment.

*Id.* at 906. Applying this test to the case at bar, we hold that Motorists is estopped from denying coverage.

We first examine the element of Motorists' conduct. Because the facts of this case are extremely important in reaching our result, we will set them forth in some detail. As noted, Appellant and Motorists began their business relationship in 1989. The two generally contracted for a six-month period of coverage, payable in two installments, one at the beginning of coverage and one three months later. From the beginning of the relationship until the February 22, 1991, auto accident, Motorists twice allowed Appellant to tender late installment payments and nonetheless continue her insurance coverage. In September of 1989, Motorists accepted Appellant's second installment over a month after the due date. After receiving the payment, Motorists issued Appellant an endorsement making the policy effective from the

date the premium had been due; in other words, the late payment operated retroactively to keep the existing policy in force. In April of 1990, Appellant again sent in the second installment of her premium over a week after the due date, and again Motorists accepted the payment and applied it retroactively, continuing her coverage from the payment's due date.

Motorists points out that, in the instant situation, Appellant did not merely miss an installment payment and instead had let her auto insurance lapse. Even when Appellant allowed her policy to lapse completely, however, Motorists continued to accept her premium payments and issue retroactive insurance coverage. For instance, Appellant's policy lapsed in December of 1989. Once Motorists informed her that her coverage had expired, she submitted another application and premium payment. Motorists accepted it, issuing a policy effective December 21, 1989—the date Appellant tendered the premium. The same situation arose in June of 1990. After receiving notice from Motorists that her auto insurance had expired on June 21, 1990, Appellant tendered a $121.74 premium payment to Motorists on July 19, 1990. Motorists issued her a new policy, effective beginning July 19—the date Motorists received the premium. Both times, although the prior policies had lapsed, Motorists accepted Appellant's premiums and issued her an insurance policy.

There is nothing different about the situation arising in January of 1991 that produced the current dispute. Appellant's insurance coverage lapsed. Motorists informed her of the lapse and she subsequently tendered another premium. Appellant had reason to believe that Motorists would issue her a new policy, effective either from the date of submission or receipt of the premium, although her previous coverage had expired; after all, Motorists had done so twice before. Motorists' prior actions left every indication that, if Appellant reapplied for insurance and submitted a premium payment, Motorists would extend her coverage beginning, at the latest, on the date Motorists received the payment. Motorists' conduct in failing to inform her

otherwise amounts to a concealment of material facts.

Although Motorists argues vehemently that its "frequent lapse" policy should control, Motorists' internal business practices are of no consequence here. In fact, the lack of notice of those practices to Appellant establish the second and third elements of estoppel required by *Gray*. For estoppel to apply, the estopped party must be aware of the concealed material facts and those facts must be unknown to the other party. *Gray, supra* at 906. Left uncommunicated, Motorists' decisionmaking procedures could have no effect on Appellant, a fact recognized by previous decisions.

In *American Life and Accident Ins. Co. v. Clark*, Ky., 407 S.W.2d 433 (1966), the insurer accepted premium arrearages for reinstatement of a lapsed life insurance policy. Between the company's acceptance of the premiums and the expiration of the company's internal waiting period for reinstatement, the insured died. After considering the insurance company's attempt to deny coverage pursuant to its internal policy, this Court's predecessor held that "[t]he rules of the company, uncommunicated to the insured, may not be used by the company as evidence against the insured, which would afford the insurance company to deny liability . . . ." *Id.* at 435.

Similarly, in *Equitable Life Assurance Soc'y v. Brewer*, 225 Ky. 472, 9 S.W.2d 206 (1928), an insurance company retained a premium after a policy had lapsed, but later claimed coverage had not entered into effect until the company had completed certification of the insured's good health. The insured lacked notice of the conditional effectiveness of the payment, a fact the Court held to be controlling: "When the payment of the premium was tendered after the grace period had expired, the company was not required to accept it; but when the company did accept it, it was incumbent on it to bring home to the insured any conditions it desired to impose." *Id.* at 475, 9 S.W.2d 206.

The results reached in *American Life* and *Equitable Life* are, we believe, consistent with the requirements of equitable estoppel that the estopped party have knowledge of material facts of which the other party is unaware. Thus, when Motorists cashed Appellant's check and retained the funds without giving her notice that, under its policies, it might refuse coverage, Motorists assumed the risk "of liability accruing before notice of the desired conditions was brought home to the assured." *Id.* at 475–76, 9 S.W.2d 206.

Application of estoppel also requires that the estopped party "act with the intention or expectation his conduct will be acted upon." *Gray, supra* at 906. In its opinion, the Court of Appeals held that "there is no evidence that Motorists intended for Howard to rely on its deposit of her check to create insurance coverage." We believe that requiring the party seeking to invoke estoppel to show actual intent to mislead, though, asks too much. "It is not essential to the creation of an equitable estoppel . . . that the party sought to be estopped should have had an actual intent to deceive, defraud, or mislead." 28 Am.Jur.2d *Estoppel and Waiver* § 41 (1966). The fact that the party to be estopped "should have known or had reason to believe or expect [his actions] would have such an effect" is enough. *Id.* We believe that the course of dealing here, where an insurer repeatedly accepted late payments and issued retroactive coverage, is sufficient to show that Motorists should have known or expected that Appellant would rely on the insurer's representations.

Finally, the party seeking estoppel must detrimentally rely on the misrepresentation or concealment of material fact. The Court of Appeals also felt Appellant had failed to establish this element, holding that Motorists' deposit of Appellant's check did not cause her to suffer any detriment or change her position in any way. A review of Appellant's deposition below, though, reveals otherwise. Appellant knew that Motorists had cashed her check, having received the cancelled check from her bank, and assumed that she had insurance coverage. Appellant testified that she would not have driven her car if she had known she had no insurance. Had Motorists informed her of the conditional nature of coverage, she might have asked for a refund of the premium. She might have sought insurance elsewhere. Instead,

due to Motorists' actions—particularly its cashing of Appellant's check—Appellant continued to drive, believing she had auto insurance. Only when she reported the accident did Appellant discover that Motorists had refused to insure her.

We believe the facts as detailed above establish the required elements of estoppel under *Gray*. Motorists engaged in a course of dealing where it repeatedly accepted late premiums, even if the policy had lapsed, and issued Appellant retroactive coverage. By cashing Appellant's check and retaining the money for two weeks without informing her of the conditional nature of the acceptance, Motorists concealed material facts of which it was uniquely aware. While Motorists knew the true state of affairs, Appellant did not, and reasonably relied on the facts as she understood them, to her detriment. Accordingly, Motorists is estopped from denying coverage.

As a final matter, we address Appellant's claim against Doctrow. Based on its decision on the coverage issue, the Shelby Circuit Court originally dismissed Appellant's action against Appellee Doctrow as moot. The Court of Appeals, having reached a contrary result, reinstated the action. Doctrow did not file a cross-motion for discretionary review. Therefore, under CR 76.21, the Court of Appeals' opinion decision reversing the dismissal of the action against Doctrow controls. *See Nelson Steel Corp. v. McDaniel*, Ky., 898 S.W.2d 66, 67 (1995).

For the foregoing reasons, the decision of the Court of Appeals is reversed and this case remanded to Shelby Circuit Court for proceedings consistent with this opinion.

STEPHENS, C.J. and GRAVES, LAMBERT and WINTERSHEIMER, JJ., concur.

COOPER, J., dissents by separate opinion, in which JOHNSTONE, J., joins.

COOPER, Justice, dissenting.

Respectfully, I must dissent.

The majority opinion leaves the impression that Motorists Mutual issued only one policy of insurance to Appellant; and that in each instance in which a late payment was accepted, it was given retroactive application so that there were never any periods in which she was uninsured. In fact, four separate policies were issued to Appellant, all of which lapsed because of nonpayment; never was a late payment applied retroactively to reinstate a lapsed policy; and on three occasions, she was uninsured for a period of time before a new policy was issued. On two occasions, late payments were accepted in lieu of cancellation of *unexpired* policies. The following is a summary of the history of each policy:

*1. Policy No. 1830–06–337229–00A.*

*April 29, 1989.* Appellant submitted an application for a six-month policy of insurance with Motorists through Doctrow–Rich Insurance Agency. She filled out an application and gave Doctrow–Rich her personal check for $127.00 for the first three months' premium. Doctrow–Rich issued a binder and forwarded the application and check to Motorists. When the check was returned for insufficient funds, Motorists notified Appellant in writing that the policy was cancelled retroactively to April 29, 1989. Appellant was uninsured from April 29 through June 9, 1989.

*2. Policy No. 1830–06–342298–00A.*

*June 9, 1989.* Appellant again submitted an application for a six-month policy of insurance with Motorists through Doctrow–Rich, this time tendering $127.00 cash with her completed application. Doctrow–Rich again issued a binder and submitted the application and the premium payment to Motorists. The policy was issued providing coverage for the period June 9 through December 9, 1989. The next premium payment of $134.68 was due on September 5, 1989.

*September 5, 1989.* The premium was not paid.

*September 12, 1989.* Motorists sent Appellant written notice that the policy would be cancelled if the premium was not paid by September 28, 1989.

*October 4, 1989.* The premium was paid and the policy remained in effect.

*November 6, 1989.* Motorists sent Appellant a thirty day written notice that she could renew the policy for another six months by paying a premium of $248.45 before the expiration date of December 9, 1989.

*December 9, 1989.* The renewal premium was not paid. The policy lapsed.

*December 19, 1989.* Pursuant to KRS 304.20–040(7), Motorists notified Appellant and Doctrow–Rich that the policy had lapsed effective December 9, 1989. Appellant was uninsured from December 9 through December 21, 1989.

### 3. Policy No. 1830–06–342298–10A.

*December 21, 1989.* Appellant applied for a new policy with Motorists through Doctrow–Rich. She filled out a new application and paid Doctrow–Rich $126.22 as three months' premium. Doctrow–Rich issued a binder and submitted the new application and the premium payment to Motorists. On January 5, 1990, Motorists issued a new policy providing coverage from December 21, 1989 through June 21, 1990.

*March 2, 1990.* Motorists notified Appellant in writing that the next premium of $121.25 was due March 23, 1990.

*March 23, 1990.* The premium was not paid.

*March 29, 1990.* Motorists gave Appellant written notice that the policy would be cancelled on April 14, 1990 if the premium was not received. The premium was received before that date and the policy remained in effect.

*May 17, 1990.* Motorists sent Appellant a thirty day written notice that she could renew the policy for another six months by paying another three months' premium before the policy expiration date of June 21, 1990.

*June 21, 1990.* The premium was not paid. The policy lapsed.

*July 2, 1990.* Pursuant to KRS 304.20–040(7), Motorists sent written notice to Appellant and Doctrow–Rich that the policy had expired as of June 21, 1990. Appellant was uninsured from June 21 through July 19, 1990.

### 4. Policy No. 1830–06–342298–20A.

*July 19, 1990.* Upon receipt of an application and a three months' premium, Motorists issued a new policy providing coverage from July 19, 1990 through January 19, 1991.

*October 1, 1990.* Motorists sent Appellant written notice that her next three months' premium was due by October 20, 1990.

*October 20, 1990.* The premium was paid and the policy remained in effect.

*December 17, 1990.* Motorists gave Appellant a thirty day written notice that she could renew the policy for another six months by paying a three months' premium before the expiration date of January 19, 1991. The notice contained the following in capital letters:

IF NO PAYMENT IS RECEIVED BY THE DATE DUE, YOUR INSURANCE COVERAGE WILL EXPIRE AT 12:01 A.M., S.T. ON THE "EXPIRATION DATE" INDICATED ABOVE.

Appellant admits that she received this notice.

*January 19, 1991.* The premium was not paid. The policy lapsed. Motorists gave written notice to the lienholder on Appellant's vehicle that the policy was no longer in effect.

*January 29, 1991.* Pursuant to KRS 304.20–040(7), Motorists sent written notice to Appellant and Doctrow–Rich that the policy had expired as of January 19, 1990. The notice contained the following advice:

WE URGE YOU TO CONTACT YOUR AGENT IMMEDIATELY TO DISCUSS YOUR INSURANCE NEEDS.

*February 3, 1991.* Appellant went to the office of Doctrow–Rich to see if she could obtain reinstatement of her policy by paying a late premium. Jeff Doctrow knew that Motorists would not issue a new policy to Appellant because of the frequency of her past late payments and policy lapses. Therefore, he did not accept her tendered premium payment and did not issue a new binder. He told Appellant that she could try sending the check directly to Motorists, but that he did not know what they would do if she did.

*February 5, 1991.* Appellant mailed a check in the amount of $126.94 directly to Motorists unaccompanied by an application for a new policy.

*February 7, 1991.* The check was received at Motorists' home office in due course of mail. A clerk used a computer to match the name on the check with the policy number of Appellant's most recent policy and wrote that number on the check.

*February 8, 1991.* The check was deposited in the normal course of business.

*February 13, 1991.* When it was discovered that the check was for a lapsed policy, the matter was referred to a Motorists underwriter, who treated it as an application for a new policy. Because of Appellant's past history of frequent failure to pay premiums when due and lapsed policies, the decision was made to decline the application.

*February 19, 1991.* Motorists sent a letter to Appellant with a copy to Doctrow–Rich advising that Motorists was unable to accept the check as a late payment because it was received after the policy expiration date. A check for $126.94 payable to Appellant was included with the copy sent to Doctrow–Rich.

*February 22, 1991.* Doctrow–Rich placed the check in the United States mail in an envelope addressed to Appellant. Appellant admits she received the notice from Motorists and the check from Doctrow–Rich.

*Also on February 22, 1991,* Appellant was involved in the automobile accident which is the subject of this litigation.

Appellant's primary argument throughout this litigation has been that the mere acceptance and deposit of her check by Motorists required Motorists to issue her a new policy effective as of the date of receipt of her check. However, the great weight of authority on this issue, including long-standing Kentucky precedent, is to the contrary. *Troutman v. Nationwide Mutual Ins. Co.,* Ky., 400 S.W.2d 215 (1966); *Carden v. Liberty Mutual Ins. Co.,* 278 Ky. 117, 128 S.W.2d 169 (1939); *see also, Dolan v. Utica Mutual Ins. Co.,* 650 F.Supp. 851 (D.Mass.1986); *State Farm Fire & Casualty Co. v. Continental Insurance Co.,* 606 F.Supp. 155 (W.D.Ky.1985); *DeTemple v. Southern In-* *surance Co.,* 154 Ariz. 79, 740 P.2d 500 (1987); *Prudential Insurance Co. v. Nessmith,* 174 Ga.App. 39, 329 S.E.2d 249 (1985); *McMillon v. Old Republic Life Ins. Co.,* 33 Ill.App.3d 658, 342 N.E.2d 246 (1975); *Kimball v. Kingsbury,* 27 Utah 2d 70, 493 P.2d 300 (1972); *Harris v. Criterion Insurance Co.,* 222 Va. 496, 281 S.E.2d 878 (1981); R. Long, 4 *The Law of Liability Insurance,* § 17.37, (1966). These authorities hold that once a policy has lapsed, the tender of a premium payment by the former policyholder is but an "offer" to make a new contract, which is accepted only by some affirmative act by the insurer indicating an intent to accept the offer. The retention of the tendered payment by the insurer for a reasonable period of time necessary to investigate the possible risk does not constitute an acceptance of the risk.

*American Life and Accident Ins. Co. v. Clark,* Ky., 407 S.W.2d 433 (1966) and *Equitable Life Assurance Society v. Brewer,* 225 Ky. 472, 9 S.W.2d 206 (1928), discussed at length in the majority opinion, do not hold to the contrary and are easily distinguishable on their facts. In *Clark,* the insurer not only had received and deposited the premium, but also had approved the reviver of the policy, and had withdrawn the policy from the record of lapsed policies and returned it to the record of reinstated policies. Notice of the reinstatement had been sent to and received by the company's local agent before the loss occurred. The company denied payment on the basis of an internal rule that reinstatement was not effective until entry was made in the premium receipt book and this was not accomplished until after the loss occurred. That condition was not contained in the policy.

The company was permitted a reasonable time within which to investigate the application for reinstatement or revival, and it had the right to deny the reinstatement. Upon accepting the application for reinstatement of the policy on its books and withdrawing the policy as lapsed, it was effective as of that date.

*American Life and Accident Ins. Co. v. Clark, supra,* at 436.

In *Brewer,* the policy contained a provision providing for reinstatement upon payment of the past due premium. The insurer accepted the premium after the policy lapsed, but claimed after the loss that reinstatement was conditioned upon receipt of a completed certificate of the insured's good health. The policy provision permitting reinstatement did not contain the condition relied upon by the insurer and the loss occurred before the insured could be notified of the condition. *Compare Counties Contracting and Construction Co. v. Constitution Life Ins. Co.,* 855 F.2d 1054, 1061 (3rd Cir.1988) (where reinstatement provision required presentation of evidence of insurability and that requirement was unfulfilled prior to loss, the policy was not reinstated). None of the policies issued to Appellant by Motorists contained a provision permitting reinstatement after lapse. Each policy simply provided:

> **Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

This provision is in accord with KRS 304.20–040(7), which provides as follows:

> If the insurer has manifested its willingness to renew by mailing or delivering a renewal notice, bill, certificate, or policy to the first-named insured at his last known address at least thirty (30) days before the end of the current policy period with the amount of the renewal premium charge and its due date clearly set forth therein, then the policy shall expire and terminate without further notice to the insured on the due date, unless the renewal premium is received by the insurer or its authorized agent on or before that date. When any policy terminates pursuant to this subsection because the renewal premium was not received on or before the due date, the insurer shall, within fifteen (15) days, deliver or mail to the first-named insured at his last known address a notice that the policy was not renewed and the date on which the coverage under it ceased to exist.

Unlike life insurance policies, *see* KRS 304.15–130, there is no legal requirement that a casualty policy contain a reinstatement provision. Since there were no reinstatement provisions in any of the policies issued to Appellant, neither of the two previous lapsed policies were reinstated as a result of Appellant's subsequent submission of a new application. Rather, on both occasions, upon acceptance of the new application and premium, Motorists issued an entirely new policy.

The majority holds that Motorists' is estopped from declining to issue yet another policy to Appellant because of its two previous acceptances of her applications for new policies after lapses of previous policies. It characterizes Motorists' failure to specifically inform Appellant that it had the right to refuse future applications as a concealed condition of coverage, as in *Equitable Life Assurance Society v. Brewer, supra,* and that such amounted to "a misrepresentation of material facts." Maj. op., at p. 528. The Opinion then concludes *as a matter of law* that Appellant "reasonably relied" upon Motorists' previous acceptances of such applications in acting to her detriment by not attempting to obtain insurance elsewhere. (Even if there was sufficient evidence to support a finding of "reasonable reliance," such would at best entitle Appellant to a jury trial, not a summary judgment. *Steelvest, Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476 (1991).)

However, it is unnecessary to reach the issue of "reasonable reliance" in this case, because this record will not support the basic finding necessary for a contract by estoppel. In order to establish an estoppel, there must have been a previous course of dealing between the parties sufficient to create a "reasonable reliance" by Appellant which induced her to act to her detriment. In each prior instance where Motorists had issued Appellant a new policy, she had submitted an application for a new policy, she had paid her premium to Doctrow–Rich, and Doctrow–Rich had issued her a temporary binder. It strains imagination, much less logic, to assert that one who submits an application for insurance coverage is entitled to assume that her application will be accepted, or that failure to inform an applicant that the company

has a right to decline her application constitutes concealment of a material fact. Never before had Doctrow–Rich refused to accept her tendered premium or refused to issue a temporary binder pending acceptance of her application. Never before had Appellant sent a premium directly to Motorists and never before had Motorists been tendered a premium on a lapsed policy. Always after lapse, the premium had been tendered by Doctrow–Rich and had been accompanied by an application for a new policy. Thus, there was no previous course of dealing between Appellant and Motorists which would support a contract by estoppel in this case. *Travelers Fire Ins. Co. v. Bank of Louisville*, Ky., 243 S.W.2d 996, 999 (1951); *compare Young Industries, Inc. v. Hildebrand Company*, Ky., 491 S.W.2d 841 (1973); *Willey v. Terry & Wright of Kentucky, Inc.*, Ky., 421 S.W.2d 362 (1967). And Appellant knew this transaction was different from her previous course of dealings with Motorists and Doctrow–Rich. She admits that Jeff Doctrow told her that she could send in the check, but that he did not know what Motorists would do.

For these reasons, I would affirm the decision of the Court of Appeals.

JOHNSTONE, J., joins this dissent.