IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2001 Session

## AHMAD VAKILI, ET AL. v. RANDY HAWKERSMITH, ET AL.

**Appeal from the Chancery Court for Coffee County**
**No. 99-364    John Rollins, Chancellor**

_____

**No. M2000-01402-COA-R3-CV  - Filed October 5, 2001**

_____

This case arises from a home construction contract entered into by Appellants and Appellee. Appellants filed a complaint against Appellee in the Chancery Court for Coffee County for breach of contract. Appellee filed an answer and counter-complaint. The trial court found that the contract was a cost-plus contract with no cap or ceiling on the price, and rendered judgment in favor of Appellee for $26,945.10. Appellants appeal. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and PATRICIA J. COTTRELL, J., joined.

James S. Stephens, Tracy City, Tennessee, for the appellants, Ahmad Vakili and Lisa Vakili.

Richard W. Gabriel and John R. LaBar, Tullahoma, Tennessee, for the appellee, Randy Hawkersmith, Individually and Hawkersmith Construction, Inc.

## OPINION

FACTS:

In 1998, the plaintiffs, Mr. And Mrs. Vakili, entered into a contract with the defendant to build a 3,800 square foot house on property they owned located at 3 Clairmont Circle in Tullahoma, Tennessee. The defendant, Randy Hawkersmith, is sole stockholder of Hawkersmith Construction, Inc. The plaintiffs solicited cost estimates from several area contractors. The plaintiffs provided the defendant with a set of house plans along with a specification sheet for the house. The defendant gave the plaintiffs an estimate of the cost to build the house relying upon the limited information the plaintiffs provided him. The estimate was $270,778.79.

The plaintiffs maintain that they informed the defendant that $270,000.00 would be a ceiling price. There is no evidence in the record to support this proposition except for the testimony of the

plaintiffs. The defendant maintains that he would not commit to building the house for a fixed price because there are too many variables that go into building a house. The defendant only contracts to build houses on a cost-plus basis, whereby, the homeowner only pays for what actually goes into the house adding the builder's commission in excess of that price at a certain percentage.

The parties entered into a contract provided by the defendant on November 20, 1998 for construction of the plaintiffs' home. The contract stated that the defendant would build a 3,800 square foot house for the plaintiffs and that "Contractor shall be entitled to a payment of 10% above the costs of construction." The $270,778.89 amount was not referenced in the contract, which reads in pertinent part as follows:

> 1. Contract Description. Contractor shall build a home of approximately 3800 square feet, in accordance with the attached plans and specifications, initialed by the parties on premises known as Lot 17 & half of 18 Kings Ridge Subdivision.
> 2. Payment. On completion, Contractor is to render a detailed, itemized statement to Owner showing the net cost of materials delivered at the building site, the net cost of materials actually installed in, and delivery charges and labor actually performed for and on the building. Upon the expiration period of a properly filed Notice of Completion, Contractor shall be entitled to a payment of 10% above the costs of construction.
> . . . .
> 7. Change Orders. Owner reserves the right to order work changes in the nature of additions, deletions, or modifications, without invalidating the Agreement, and agrees to make corresponding adjustments in the contract price in time for completion. All changes will be authorized by a written change order signed by the parties.

As work progressed on the plaintiffs' house, there were a number of plan changes that took place some increasing the cost of construction and some decreasing the cost of construction. On several occasions during the construction of the plaintiffs' house, the defendant provided the plaintiffs with cost updates titled "Estimated Costs" so that the plaintiffs would know where the money was going and what bills were being paid. The plaintiffs were not provided any revised estimates of what the total cost of the house would be.

On July 23,1999, the Plaintiff, Mr. Vakili, went to the defendant's office to complete payment. The defendant presented the plaintiff with the final bill along with an itemized statement of costs of construction indicating that the plaintiffs owed $29,466.66 plus $1,088.56 for reimbursement of the premium for workers' compensation insurance coverage. The plaintiff post-dated two checks for the amounts due but asked the defendant not to cash the checks until the next week. The plaintiffs sent the defendant a letter dated July 28, 1999 stating in part:

> This letter is to inform you that the check number 8331 that I wrote to you on 7/23/1999 for the 10% fee for the amount of $29,466.66 is not a valid check. I wrote the check under protest of significant cost overrun on the construction of our home,

as I noted to you during the meeting on July 23, early morning. I still cannot understand why the construction cost has exceeded your initial maximum estimate amount of $246,162.54.

On August 2, 1999, the defendant filed a lien on the property. Subsequently, the defendant filed an Amendment to Notice of Lien to reflect several additional bills and invoices for materials and services which were not included in the itemization of costs of construction previously furnished to the plaintiffs. The lien was in the amount of $31,569.12. On August 16, 1999, an Agreed Order was entered into whereby the lien was discharged upon the plaintiffs tendering the sum of $31,569.12 into the registry of the Coffee County Chancery Court.

On August 24, 1999, the plaintiffs filed a Complaint in the Chancery Court of Coffee County. The non-jury trial of this case was held on February 28, 2000. The Chancellor entered an Order, and subsequently on April 10, 2000, an Amended Order.

The Chancellor found:

[T]he parties entered into a cost plus contract with no cost cap or ceiling.
. . . [T]he Court finds that the only portion of the house as constructed which was at variance with the bills submitted by the Defendant relates to a retaining wall built by the Defendant on the Plaintiffs' property. The court finds that the cost of the retaining wall is $1,500.00. This detail of construction was not discussed with Plaintiffs prior to construction.
The Court finds that there are certain aspects of construction that were not complete. . . . [T]he cost for repairs and finishing detail to complete the "punch list" on the Plaintiffs residence is $2,500.00. . . .
IT IS THEREFORE ORDERED AS FOLLOWS:
That the Defendants, Randy Hawkersmith and Hawkersmith Construction, Inc., are awarded a judgment against the Plaintiffs, Ahmad Vakili and wife, Lisa Vakili, in the full amount of their contractors fees totaling $30,945.10. Said sum is reduced by the amount of $4,000.00 representing the cost of the retaining wall and the cost for repairs and finishing detail, for a judgment of $26,945.10.

The plaintiffs appeal the trial court's judgment.

Appellate review is governed by Tenn. R. App. P. 13(d) providing that "review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." However, with regard to issues of law, the standard of review is de novo without a presumption of correctness. *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79, 80 (Tenn. 1996); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996).

The first issue on appeal is whether the contract is a cost-plus contract. The Chancellor specifically found that "[f]rom the exhibits entered into evidence and the testimony of the parties, the Court finds that the parties entered into a cost plus contract with no cost cap or ceiling." We affirm the Chancellor and find that there is no question that the contract at issue was a cost-plus 10% contract with no cost cap or ceiling.

Cost-plus contracts are commonly used in the construction industry. By definition, they generally provide that the contractor will complete construction with no specific cost for the construction. Rather, the contractor receives a percentage of the total construction cost. Sometimes cost-plus contracts contain a maximum price or the estimated price of the project. The contract in this case did not contain an agreed limit as to price, nor did it contain a cost estimate. "The word 'estimate' means a general calculation or an approximate computation." *Davis v. Sliney*, 1988 WL 75331, at *3 (Tenn. Ct. App. July 21, 1988). Even if the contract had contained the estimated price, "[w]hen an estimate is provided in a cost plus contract it is simply that–an estimate, not a fixed price or guaranteed maximum." *Rodgers v. Walker*, No. 03A01-9708-CH-00371, 1998 WL 670381 at *3 (Tenn. Ct. App. 1998).

Appellants dispute the Chancellor's finding asserting that parol evidence indicated the plaintiffs had a budget and that the parties had an implicit understanding that the price of the house could not go over the estimated cost of $270,000.00. The evidence in the record does not support this proposition. The defendant testified that he told the plaintiffs when they met for the first time that he does not build homes for a fixed price. The defendant testified:

> A. (Mr. Hawkersmith) [W]hen I met him I told him I didn't do bid work on houses.
> Q. (Mr. Gabriel) What does that mean, you don't do bid work?
> A. I don't give fixed prices on a house. There's too many variables. I find when you do a fixed house on cost and then people always change as you go and at the end getting your money for what they've had it is hard to do. So if you do it on a cost plus which is the way I do it, you pay basically you're paying for the house as if I built it. You're getting exact cost of the house but then after we met he came back and he kind of wanted to negotiate the estimate. He said that another builder had gave him a cheaper estimate. I told him it's not a fixed price. It's an estimate. It could cost you more or less. It just depends on what you do at your house. I said, "If you have a cheaper estimate," I said, "that's fine. I've met you. You seem like a nice man. I've got no hard feelings." And he said, "No, I want you to build my house." And so then we met a time or two, you know, and I guess that's it.
> . . . .
> Q. Ultimately did you enter into a contract with him?
> A. We did around the 20th of November.
> Q. And of what nature was that contract? . . .
> A. That contract was a cost plus.

The plaintiff, Mr. Vakili, testified: "Yes, this is the contract we signed. Actually I wanted to have a fixed price contract but Mr. Hawkersmith indicated he cannot commit to a fixed price."

The pre-contract discussion is consistent with the contract language. Ultimately, the cost of the construction of the house depended upon what actually went into the house, not on the pre-contract estimate based upon limited information provided to the defendant.

During construction, the plaintiffs made upgrades to the house not included in the plans the defendant based the estimate on. The plaintiffs added a driveway, security system, central vacuum system, kitchen light box, recessed lighting, wet bar, hardwood flooring, additional heating and air conditioning units, coin corners, window treatments, window upgrades, enclosed porch, and incurred additional costs as the result of the plaintiff's decision to move the driveway.

The plaintiffs assert that they eliminated or down graded certain things in the construction of the house such as a Jacuzzi tub, windows, a fireplace, bookshelves, a pocket door, and counter tops. Ultimately, the reduction of costs created by the removals and downward modifications did not equalize the amenities added to the house by the plaintiffs.

When interpreting a written contract, it is necessary to ascertain and to give effect to the intentions of the contracting parties as reflected in the written contract itself. *Realty Shop, Inc. v. R.R. Westminster Holding*, 7 S.W.3d 581, 597. It is clear from the contract and from the parties' discussions that the parties intended to enter a cost-plus contract. We affirm the trial court's finding that the contract at issue is in fact a cost-plus contract.

Appellants next assert that a contractor in a cost-plus contract has a duty to give notice of significantly increased costs over the pre-contract estimate when the contract contains a written change order provision. This issue is without merit under the facts of this case. Primary reliance by Appellants is upon *Rodgers v. Walker*, No. 03A01-9708-CH-00371, 1998 WL 670381 (Tenn. Ct. App. Sept. 30, 1998). The facts in *Rodgers* present an extreme situation not at all comparable to the case at bar. Walker was to build for Rodgers a two level 3200 square foot house under a cost-plus contract at an estimated cost of $230,000.00. While Mr. and Mrs. Rodgers were in Europe, Walker, without permission from anyone, constructed a three level home of 4800 square feet which included a basement. The *Rodgers'* case relied on *Barnett v. Willis*, No. 89-361-II, 1990 WL 186697 (Tenn. Ct. App. June 13, 1990), perm. App. denied (Tenn. Nov. 9, 1990) (opinion designated "not to be published). *Barnett* is not to be accorded any precedential value because the Tennessee Supreme Court directed that it not be published and furthermore withdrew it from publication on January 11, 1991. *Realty Shop, Inc. v. R.R. Westminster Holding*, 7 S.W.3d 581, 600-01 (Tenn. Ct. App. 1999).

*Barnett* had construed Tennessee Code Annotated section 47-50-112(c) to prohibit waiver of written change order provisions unless such waiver was in writing. Such a construction is not warranted. This Court has held:

[B]y the rules of the common law, it is competent for the parties to a simple contract in writing, before any breach of its provisions, altogether to waive, dissolve, or abandon it, or to add to, change, or modify it, or vary or qualify its terms, and thus make it a new one. The reason for this is that simple contracts, whether written or otherwise, are, in the absence of a statute changing the rule, of the same dignity in contemplation of law, and therefore the written contract may be changed, modified, or waived in whole or in part by a subsequent one, express, written, oral, or implied. It has been said that a subsequent parol modification of a written contract upon a new consideration constitutes a new agreement.

17 Am.Jur.2d *Contracts* § 466 (1964).

> After a written contract is made, it may be modified by the express words of the parties in writing, as well as by parol. *Co-Operative Stores Co. v. United States Fidelity & Guaranty Co.*, 137 Tenn. 609, 622, 195 S.W. 177, 180 (1917).
>
> Whether written or oral, modifications of written contracts must be with the consent of both parties. *V.L. Nicholson Co. v. Transcon Inv. & Fin. Ltd., Inc.*, 595 S.W.2d 474, 482 (Tenn. 1980).
> *Galbreath v. Harris*, 811 S.W.2d 88, 91-92 (Tenn. Ct. App. 1990).

Tennessee Code Annotated section 47-50-112(c) provides:

(c) If any such security agreement, note, deed of trust, or other contract contains a provision to the effect that no waiver of any terms or provisions thereof shall be valid unless such waiver is in writing, no court shall give effect to any such waiver unless it is in writing.

Since the common law provided that written and oral contracts were in contemplation of law equal in dignity and subject to change, modification or waiver may be made either orally or in writing. T.C.A. § 47-50-112(c) is in derogation of the common law and must be strictly construed. *See Austin v. County of Shelby*, 640 S.W.2d 852 (Tenn. Ct. App. 1982).

This statute applies solely to contractual provisions to the effect that no waiver of any terms or provisions of the contract shall be valid unless such waiver is in writing. No such provision appears in the contract at bar wherein there is only a simple provision that change orders must be written. The rule as to waiver of written change order provisions (in the absence of a written waiver provision contemplated by T.C.A. § 47-50-112(c)) the common law remains as asserted in *Galbreath* and in *Moore Constr. v. Clarksville Dept. of Elec.*, 707 S.W.2d 1 (Tenn. Ct. App. 1985) wherein this Court held:

> Including a written change order requirement in a construction contract is not uncommon. It promotes a more definite understanding between the parties and thus, helps

to avoid potential controversies. *Bannon v. Jackson*, 121 Tenn. 381, 391, 117 S.W. 504, 506 (1908). It benefits the owner primarily because it provides formal notice that a claim is being made thereby giving the owner an opportunity to take appropriate corrective action or to prepare a proper response to the claims. In Tennessee, as in a majority of jurisdictions, these provisions are valid and binding. *W & O Construction Co. v. City of Smithville*, 557 S.W.2d 920, 922 (Tenn. 1977). However, like other contractual provisions, they can be waived or abrogated by the parties.

The waiver of a written change order requirement by an owner is not always required to be in writing but may be the result of the parties' conduct on the job. Thus, it is not uncommon for courts to find that an owner has waived a written notice requirement in cases where extra work has been ordered verbally by the owner or the extra work has been performed with the owner's knowledge and without its objection. See Annot., 1 A.L.R.3d 1273 §§ 14 & 15 (1965).

The course of dealing between the parties can also amount to a waiver where the conduct of the parties makes it clear that they did not intend to rely strictly upon a contract's written notice requirement and that adherence to such a requirement would serve no useful purpose. *Copco Steel & Engineering Co. v. United States*, 341 F.2d 590, 598 (Ct. Cl. 1965), and *Willey v. Terry & Wright of Kentucky, Inc.*, 421 S.W.2d 362, 363 (Ky. App. 1967). Thus, an owner's consideration of a claim on its merits without invoking a formal written notice requirement has been held to amount to the waiver of the requirement thereby preventing the owner from asserting this claim at a later time. *Blount Brothers Corp. v. United States*, 424 F.2d 1074, 1076 (Ct. Cl. 1970); *Morrison-Knudsen Co. v. United States*, 397 F.2d 826, 848 (Ct. Cl. 1968). Once a party has waived the requirement with regard to a particular matter, it cannot revoke its waiver, in whole or in part, at its convenience. *Copco Steel & Engineering Co. v. United States*, 341 F.2d 590, 599 (Ct. Cl. 1965).

*Moore Constr. v. Clarksville Dept. of Elec.*, 707 S.W.2d 1, 12-13 (Tenn. Ct. App. 1985) (internal footnotes omitted); *see also Hawkins v. Ellis*, No. 02-A01-9708-CH-00203, 1998 WL 704521 (Tenn. Ct. App. Oct. 12, 1998); *Birdwell v. McKinney*, No. 01A01-9701-CV-00023, 1997 WL 773730 (Tenn. Ct. App. Dec. 17, 1997).

In a comprehensive treatment of Tennessee Code Annotated section 47-50-112(c) this Court held in *Realty Shop, Inc. v. R.R. Westminster Holding*, 7 S.W.3d 581:

The question becomes whether the option agreement contains a provision sufficiently similar to Tenn. Code Ann. § 47-50-112(c) that it prevents the parties from waiving any contractual provision unless the waiver itself is in writing. The answer to this question is no.

Instead of restricting waivers of contractual provisions to written waivers, paragraph sixteen of the option agreement provides only that the party to the agreement who is entitled to the benefit of a particular contractual provision "may" waive the term

-7-

or condition in writing. Paragraph sixteen does not restrict valid waivers only to those that are in writing and does not a provide that the parties cannot waive their contract rights in any other way. Thus, the language of paragraph sixteen of the option agreement does not have the same legal significance as the language in Tenn. Code Ann. § 47-50-112(c). The language of paragraph sixteen is not sufficiently similar to Tenn. Code Ann. § 47-50-112(c) to prevent the parties from waiving the written change order requirement in the option agreement either orally or by their conduct. Accordingly, the trial court erred as a matter of law when it found that paragraph sixteen of the option agreement triggered Tenn. Code Ann. § 47-50-112(c).

*Realty Shop*, 7 S.W.3d 581, 602 (Tenn. Ct. App. 1999).

As the contractual provision at bar does not even mention the term "waiver" oral or written, Tennessee Code Annotated section 47-50-112(c) is certainly not triggered in this case.

It is undisputed that all labor and materials for which cost invoices were submitted to Appellants went into the home built by Hawkersmith. All changes during construction were made by order of or with the consent of Appellants except for the costs of a retaining wall and $2,500 in "fix up" costs after completion. As to these two items totaling $4,000 the trial court did not allow recovery by Hawkersmith.

The evidence does not preponderate against the findings of the trial judge and we therefore affirm the judgment.

Costs are assessed to Appellants for which execution may issue if necessary and the case is remanded to the trial court for such further proceedings as may be necessary.

_____

WILLIAM   B.   CAIN,   JUDGE