**Thomas W. GRAY, Appellant,**

v.

**JACKSON PURCHASE PRODUCTION CREDIT ASSOCIATION, Appellee.**

No. 84–CA–1787–MR.

Court of Appeals of Kentucky.

June 21, 1985.

W. Pelham McMurry, McMurry & Livingston, Paducah, for appellant.

S. Boyd Neely, Mayfield, for appellee.

Before COMBS, HOWARD and LESTER, JJ.

HOWARD, Judge.

This is an appeal from an order of the McCracken Circuit Court which denied appellant's motion pursuant to CR 55.02 and CR 60.02 to set aside a default judgment.

On November 16, 1981, the Jackson Purchase Production Credit Association (hereinafter referred to as PCA) filed suit seeking judgment on appellant's delinquent note and foreclosure on the property securing it. A default judgment was subsequently entered against appellant and the property. Some 41.48 acres were sold at a judicial sale for $8,000.00, two-thirds of the appraised value. On June 16, 1982, appellant filed his motion seeking to set aside the judgment and sale, stating in part that he was never served with summons. The trial judge ordered the matter continued while the parties took discovery and briefed the issues. He denied the appellant's motion on May 21, 1984. We affirm the decision of the trial court.

Mr. Thomas Gray, appellant, is now in his eighties. His son, Ralph Gray, had handled all transactions with PCA but the initial loan closing on this property, not in the guise of an agent but as though he was Thomas Gray. He signed his father's name on all documents, answered his father's letters without disclosing his identity, negotiated with PCA over a period of years and ultimately signed his father's name to the certified receipt for out-of-state service of process. Ralph testified in his deposition that he assumed the loan officials knew he was not Thomas Gray, but the trial court found, and the record

supports the finding, that PCA never knew it was dealing with anyone other than appellant. So thorough was the deception that at deposition Ralph was not always able to tell whether a signature on a document was his or his father's. Both men now deny that Ralph had authority to accept service of process for Thomas. Ralph was notified of the foreclosure suit on November 24, 1981. Thomas broke his hip on December 2, 1982, and Ralph elected not to tell him of the pending lawsuit.

■ PCA asserted before the court below, and now contends, that Thomas is estopped from denying that there was proper service of process. The trial court agreed with this assertion and cited the case of *Jones v. Travis*, 302 Ky. 367, 194 S.W.2d 841 (1946). In *Jones*, the Court held that the legal title to land may be altered if the elements of an estoppel are established. These elements include: (1) Conduct, including acts, language and silence, amounting to a representation or concealment of material facts; (2) the estopped party is aware of these facts; (3) these facts are unknown to the other party; (4) the estopped party must act with the intention or expectation his conduct will be acted upon; and (5) the other party in fact relied on this conduct to his detriment.

■ In the instant case, Ralph Gray conducted himself as Thomas Gray in his negotiations with PCA. Ralph admitted in a deposition that he had only assumed that PCA knew that he was not Thomas, but he did not expressly inform PCA officials who he was. Thomas also did not identify Ralph to PCA. Ralph claimed that he was acting under the authority of a power of attorney granted to him by Thomas; but that power of attorney was never mentioned or exhibited to PCA. Ralph's address in Carterville, Illinois, was on record with PCA, but Thomas's address in West Frankfort was not on file.

Thomas concedes that Ralph was his agent with the proper authority to sign

documents. However, he contends that Ralph was not an agent authorized to receive service of process. Although there is no case on point in this jurisdiction, Thomas lists decisions in other jurisdictions in which an agent for a different purpose is not an authorized agent for receipt of process unless that agent was specifically appointed to do so. We need not discuss the merits of this contention because Ralph did not merely act in dealing with PCA as an agent of Thomas but as if he actually were Thomas. Thus, whether Thomas granted the authority to Ralph as an agent to receive process is not the relevant question. Rather, the issue is whether Thomas is estopped from denying the validity of service of process by Ralph's actions toward PCA.

Ralph's conduct in dealing with PCA indicated that he in fact was Thomas. PCA relied on these representations and believed that Ralph was the proper person to serve with process. PCA would suffer an obvious detriment if the suit was dismissed due to insufficiency of service. Thus, under the elements outlined in *Jones, supra,* equitable estoppel would prevent Thomas from now denying the validity of service.

Our reasoning above is not altered by *Mitchell v. Money*, Ky.App., 602 S.W.2d 687 (1980). In *Mitchell,* this Court held that service of process through certified mail was not sufficient to bind a decedent's estate when a copy of the summons and or complaint was sent to the decedent's address and was signed for by his wife. The Court reasoned that the decedent (Money) never became a party to the action because the trial court failed to obtain jurisdiction over him or his estate. *Mitchell* differs from the instant case because Money's wife did not hold herself out to be her husband nor did *Mitchell* rely on such belief. *Mitchell* was simply mistaken as to the proper party to serve process upon.

■ Thomas also contends that the judgment should be overturned because Ralph

was lulled or misled by PCA that no judgment would be entered or judicial sale held. The record contains evidence of numerous extensions granted by PCA for payment of the loan. On May 7, 1981, PCA sent a letter to Ralph, a/k/a Thomas, requesting that the loans be paid by July 1, 1981, or PCA would turn the matter over to its attorneys. Apparently, there was no reply. On September 15, 1981, PCA again wrote Ralph that the Association had made contact with a private auctioneer about selling the property. PCA urged Ralph to list the property with a realtor or pay off the loan. Again, no response was received from Ralph.

In November of 1981, PCA filed its foreclosure action against the property. Although Ralph signed the receipt on the certified mailing as "Thomas," there was no further reply. The default judgment hearing was held on February 26, 1982. On that same day, Ralph contacted PCA about a private sale of the property. A listing contract shortly thereafter was sent to Carterville, Illinois, by a realtor, but was not returned for nearly two months.

From this review of the record, it is difficult to imagine how PCA could have been more lenient with Ralph or Thomas. Foreclosure was delayed much longer than required. When foreclosure proceedings were initiated, Ralph was fully informed and cannot point to any statements by PCA indicating the hearing or a sale would be further delayed. Thus, Thomas has not established fraud by clear and convincing evidence. *See Sanford Construction Company v. S & H Contractors, Inc.,* Ky., 443 S.W.2d 227 (1969).

The judgment is affirmed.

All concur.