BOARD OF TRUSTEES, KENTUCKY
RETIREMENT SYSTEMS,
Appellant

v.

James GRANT, Appellee.

No. 2007–CA–000388–MR.

Court of Appeals of Kentucky.

June 20, 2008.

Jennifer Ann Jones, Frankfort, KY, for appellant.

John E. Hinkel, Jr., and Matthew D. Ellison, Lexington, KY, for appellee.

Before ACREE, KELLER, and MOORE, Judges.

## OPINION

ACREE, Judge.

The Board of Trustees of the Kentucky Retirement Systems (KERS) appeals from an order of the Franklin Circuit Court reversing its decision to reduce the monthly retirement benefit payable to James Grant following a review of his employment compensation history pursuant to Kentucky Revised Statute (KRS) 61.595(4). The Franklin Circuit Court found that KERS was equitably estopped from reducing Grant's benefit. Because estoppel presents a question of fact which the

Board of Trustees improperly refused to consider, we vacate the judgment of the Franklin Circuit Court and remand the case to the Board of Trustees for a factual determination as to the existence of estoppel. *Weiand v. Board of Trustees of Kentucky Retirement Systems,* 25 S.W.3d 88, 91–92 (Ky.2000).

Grant was an employee of the Lexington–Fayette Urban County Government from 1981 until he retired in 2004. His status as a county employee entitled him to participate in the state employee retirement system. Sometime in 2000, it was discovered that Grant was among a group of employees who were underpaid from 1996 until that time. Consequently, in February 2001, Grant received a one-time lump sum payment of $19,881.04 in addition to his regular monthly income. Due to a payroll clerical error, this sum was not properly coded as back pay.

In July 2004, Grant's employer announced an early retirement incentive program. Participants in the program would receive an additional two years of non-qualified service credit, provided they retire between August and November 2004. Since Grant qualified for the program, he arranged to meet with a KERS benefits counselor to see whether his estimated retirement benefit would be sufficient to meet his financial needs. Grant met with counselors twice in July before retiring in August. Those counselors estimated his monthly benefit would be at least $2,900.00. This was close to the $3,000.00 per month he had previously determined was what he needed to sustain him in retirement. Consequently, Grant withdrew over $7,000.00 from his 401K retirement account to purchase an additional three years non-qualified service credit and retired.

After he retired, Grant's employer sent KERS information regarding his last month's income, as anticipated by KRS 61.595(3). Although KERS received the information in October, it did not conduct a review until February 2005. When Grant's employment and income history was reviewed, KERS immediately spotted a red flag. Grant's income for the five years prior to his retirement was reported as follows:

| | |
|---|---|
| 1998-99 | $33,861.00 |
| 1999-2000 | $36,178.80 |
| 2000-01 | $60,054.72 |
| 2001-02 | $44,518.80 |
| 2002-03 | $46,149.52 |

His income for the 2000–2001 fiscal year was reported as follows:

| | | | |
|---|---|---|---|
| July 2000 | $2,898.56 | January 2001 | $ 2,898.56 |
| August 2000 | $2,898.56 | February 2001 | $23,035.04 |
| September 2000 | $4,313.84 | March 2001 | $ 5,080.16 |
| October 2000 | $2,898.56 | April 2001 | $ 3,411.44 |
| November 2000 | $2,898.56 | May 2001 | $ 3,411.44 |
| December 2000 | $2,898.56 | June 2001 | $ 3,411.44 |

Based on the disparity between his earnings in 2001 and his earnings in the previous and subsequent years, KERS inquired of his employer whether Grant's income that year, and specifically in February 2001, included a bonus payment. Once KERS learned that Grant's additional income in February 2001 was actually back pay, KERS recalculated Grant's annual income, spreading the lump sum payment out over the affected years. This resulted in a significantly lower income for 2001, and Grant's retirement benefit was reduced accordingly. In addition, he was advised that he now owed KERS the difference between his estimated benefit and the actual benefit he received for the months he had already drawn retirement income.

KERS initially prorated the lump sum payment to Grant's income since the beginning of his career, reducing his benefit by $400.00 per month. After realizing its error, KERS prorated the benefit over the actual years for which Grant was underpaid—1996–2000. This resulted in a monthly benefit of $2,632.26 per month,

$300.00 less than his estimated benefit. Grant appealed the decision to reduce his benefit, and a hearing was scheduled for September 29, 2005.

Hearing testimony established that the first benefit counselor who met with Grant never reviewed his monthly statements for 2001, attributing his unusually high income that year to overtime. The second counselor who met with Grant assumed that the counselor who prepared Grant's benefit estimate had reviewed the monthly statements for Grant's high-three, or high-five, income years. Nevertheless, when a KERS auditor had reviewed Grant's annual statements after his retirement, the auditor had immediately noticed the disparity between Grant's income for 2001 and his income for the years immediately before and after. Grant testified that he was told the final benefit amount would be close, within $5.00 or so of the estimated benefit. Since this error was not corrected until after he retired, Grant was forced to seek employment to make up the difference between the benefit he actually received and the estimated benefit.

Grant argued that KERS should be equitably estopped from reducing his benefit because: the agency misrepresented that his actual benefit would be close to the estimate; it had constructive knowledge of the correct facts concerning his income for 2001; he had no knowledge of the appropriate way to prorate his equity pay adjustment; KERS intended him to rely on its information in deciding to retire; he did rely on it and retired; and this resulted in financial harm to him. *Gray v. Jackson Purchase Production Credit Ass'n*, 691 S.W.2d 904, 906 (Ky.App.1985).

KERS argued that the hearing officer lacked statutory authority to consider estoppel. The hearing officer agreed that an administrative agency has no authority to address issues of estoppel. Further, the hearing officer found that Grant's benefit should be reduced from $2,922.00 to $2,510.00 pursuant to a letter from KERS dated March 21, 2005. This finding ignored a later letter wherein KERS stated that the reduced benefit amount actually should be $2,632.26.

Grant filed exceptions to the hearing officer's report, notably the use of the March 2005 benefit amount and the failure to consider equitable estoppel. He specifically cited our decision in *Board of Trustees v. Ray*, 2003 WL 1227585 (Ky.App., Jan.24, 2003) (NO. 2002–CA–000109–MR), wherein we upheld the Franklin Circuit Court's finding that KERS could be, and was, equitably estopped from failing to pay one hundred percent of a retiree's health insurance premium. After considering the record, the hearing officer's recommendations, and the parties' exceptions, the Board of Trustees adopted the hearing officer's order with certain minor corrections. None of these changes pertained to the matters Grant raised for consideration.

On appeal to the Franklin Circuit Court, KERS continued to argue that equitable estoppel did not apply to cases involving the Retirement Systems. The circuit court found that *Ray* clearly required the hearing officer to consider equitable estoppel arguments. However, instead of remanding the case to the Board of Trustees for a factual determination whether the elements of estoppel were met, the circuit court undertook an examination of the facts of the case and found on its own that KERS was estopped from reducing Grant's retirement benefit below the amount of its estimate to him before his retirement. This appeal followed.

On appeal, KERS continues to claim that the Board of Trustees lacked the authority to consider equitable estoppel, citing *City of Shelbyville, ex rel. Shelbyville Municipal Water and Sewer Commission*

*v. Commonwealth of Kentucky, Natural Resources and Environmental Protection Cabinet,* 706 S.W.2d 426 (Ky.App.1986) and *Kentucky Real Estate Commission v. Milgrom,* 197 S.W.3d 552 (Ky.App.2005). Neither of those cases stands for the proposition argued by KERS. Rather, *City of Shelbyville* declares that the doctrine of equitable estoppel can be invoked against a state agency, but only under exceptional circumstances which were found lacking in that case. *City of Shelbyville* at 429. In fact, in *Weiand, supra,* another case involving KERS, our Supreme Court explicitly stated that estoppel is a question of fact. *Weiand* at 91–92. Thus, not only were the hearing officer and the Board of Trustees authorized to consider estoppel, they were required to determine whether the facts support it. Kentucky Revised Statutes (KRS) 13B.090(1), .110(1); KRS 13B.120(2), (3).

▮▮▮ KERS also argues that the circuit court failed to properly apply the doctrine of estoppel against a state agency. The elements of estoppel in Kentucky have been enumerated as follows:

(1) [c]onduct, including acts, language and silence, amounting to a representation or concealment of material facts; (2) the estopped party is aware of these facts; (3) these facts are unknown to the other party; (4) the estopped party must act with the intention or expectation his conduct will be acted upon; and (5) the other party in fact relied on this conduct to his detriment.

*Gray v. Jackson Purchase,* 691 S.W.2d at 906. It is well established that equitable estoppel can be applied against a state agency. *Laughead v. Commonwealth of Kentucky, Dept. of Transp., Bureau of Highways, et al.,* 657 S.W.2d 228, 230 (Ky. 1983). However, as noted above, equitable estoppel cannot be applied against a state agency absent exceptional circumstances.

"Circumstances that are so exceptional as to allows [sic] equitable estoppel against a government agency, we think, must include some gross inequity between the parties." *City of Shelbyville,* 706 S.W.2d at 430.

We have previously conceded that there is no Kentucky case which clearly defines the special circumstances required to invoke equitable estoppel against a state agency. *J. Branham Erecting & Steel Service Company, Inc. v. Kentucky Unemployment Insurance Commission,* 880 S.W.2d 896, 897 (Ky.App.1994). However, as the circuit court correctly noted, our unpublished decision in *Ray* does provide guidance as to what such exceptional circumstances might look like.

In *Ray,* a school bus driver retired with the assurance that he had enough months of service so that one hundred percent of his insurance premiums would be paid upon his retirement. Ray met with benefit counselors from KERS on four separate occasions prior to deciding to retire. After he submitted his retirement date to his employer, KERS performed the statutorily required audit on his service and discovered that he was forty-one months short of the required number of months to entitle him to the full payment of his health insurance premiums. The Board of Trustees rejected Ray's argument that KERS should be estopped from failing to pay his entire health insurance premium. The circuit court reversed the Board and this Court upheld the circuit court. The factors that influenced the finding of estoppel in *Ray* included KERS' knowledge of a systematic misreporting of service credit for bus drivers and Ray's lack of knowledge that he could request an audit before submitting his retirement date. The circuit court considered the facts of the case *sub judice* to be sufficiently analogous to

*Ray* to entitle Grant to claim equitable estoppel against KERS.

Finally, KERS contends that the circuit court improperly estopped it from performing its statutory duties. KRS 61.595 outlines the procedure KERS is required to follow to calculate a member's retirement benefits. Subsection (3) of the statute allows KERS to provide an estimate based on "the member's known creditable compensation prior to his last month's employment and an estimate of his creditable compensation during the last month he was employed." This estimate is used to allow the State Treasurer to issue an initial payment when a member retires. Once KERS receives the official report of a member's compensation for his last month of employment, KERS is required to recalculate the member's retirement benefit. KRS 61.595(4). That same subsection provides that the official retirement allowance shall not change unless the recalculation results in a difference of at least $2.00. Finally, KRS 61.685(1) requires KERS to correct errors in benefits paid or payable. Thus, KERS points out that, when it reduced Grant's retirement benefit, it was merely fulfilling its statutory duties.

KERS argues that, under *Branham v. Kentucky Unemployment Insurance Commission,* "equitable estoppel cannot be used to estop an administrative agency from performing its statutory duties." (Appellant's brief at pg. 5). We disagree. The *Branham* case refers to a general doctrine against applying estoppel to state agencies. Further, it recognizes the "special circumstances" test acknowledged by *Laughead* and *City of Shelbyville,* among others. We believe that on remand the Board of Trustees should reconsider the facts in Grant's case in light of *Ray.* CR 76.28(4)(c).

However, the doctrine of equitable estoppel should not be applied as freely against governmental agencies as it is applied in the case of private persons. In fact, we note that "[e]quitable estoppel is almost never available against the government." *Microcomputer Technology Institute v. Riley,* 139 F.3d 1044, 1052 (5th Cir.1998)(referring specifically to the federal government). That is because government agencies such as KERS are charged with public responsibilities. If Grant was dealt an injustice, eliminating that injustice should not occur at too great an expense to the public interest protected by KERS. The Board must balance how significantly that public interest will be affected if estoppel is applied against the injustice Grant will experience if it is not. "Extraordinary circumstances," then, must be truly extraordinary and must go beyond what would be acceptable facts when the target of estoppel is not a government agency. *See, Vance v. Kentucky Office of Ins.,* 240 S.W.3d 675, 678 (Ky.App.2007)(an example of extraordinary circumstances would be "where the agency deliberately misleads a party and then acts against the party for relying on the misinformation.").

As previously discussed above, the existence of an equitable estoppel claim is a question of fact. The determination of that fact is first the responsibility of the hearing officer, KRS 13B.090(1), .110(1), and then the Board. KRS 13B.120(2), (3). We cannot set aside those findings lightly. KRS 13B.150(2). Here however, both the hearing officer and the Board refused to address Grant's claim of equitable estoppel. Prior to remanding a case for failure to make a finding of fact on an essential issue, we are required to determine whether Grant preserved the issue in accordance with KRS 13B.140. *See, Rapier v. Philpot,* 130 S.W.3d 560, 563–64 (Ky.2004).

The record shows that Grant did file exceptions to the hearing officer's report and recommendations, one of those being the failure to consider equitable estoppel. Although Grant raised the issue before the Board of Trustees, it also failed to determine whether or not he had proven equitable estoppel. Since the Board of Trustees failed to make any finding at all, and since it was the Board's responsibility to do so, the circuit court was not authorized to evaluate the facts and determine whether they support a finding of estoppel. Thus, we are required to remand this case to the Board of Trustees with directions that it make a factual finding as to whether Grant has proven equitable estoppel.

For the forgoing reasons, the judgment of the Franklin Circuit Court is vacated and this case is remanded to the Board of Trustees for further proceedings consistent with this opinion.

ALL CONCUR.