**Joyce E. GIVENS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Cabinet for Health and Family Services, Appellee.**

**No. 2010–CA–000280–MR.**

Court of Appeals of Kentucky.

April 8, 2011.

Case Ordered Published by Court of Appeals May 27, 2011.

Discretionary Review Denied by Supreme Court March 15, 2012.

Gayle E. Slaughter, Lexington, KY, for appellant.

Jerry M. Lovitt, Lexington, KY, for appellee.

Before COMBS and MOORE, Judges; ISAAC,[1] Senior Judge.

*OPINION*

MOORE, Judge:

In a July 13, 2009 order, the Cabinet for Health and Family Services substantiated an allegation, *i.e.*, determined that it was more probable than not, that Joyce E. Givens had failed to adequately supervise and had therefore neglected C.B., a foster child in her care, within the meaning of Kentucky Revised Statute (KRS) 600.020(1)(h). Givens sought review of the Cabinet's order with the Fayette Circuit Court. The circuit court affirmed the Cabinet's decision and dismissed Givens' petition after concluding that Givens had failed to preserve any error for its review. Givens now appeals. Finding no error, we likewise affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

The June 24, 2009 recommended order of the Cabinet's hearing officer describes the specifics of this case and, due to the posture of this case, it is critical to our analysis. In relevant part, it states:

### FINDINGS OF FACT

1. Joyce Givens is a fifty-four year old, single, female resident of Lexington, Kentucky. She has been a foster parent for sixteen years. At the time of the incident at issue, Ms. Givens had three foster children in her home; two girls, seventeen year old T.S. and fifteen year old C.B., and one boy, twelve year old L.K. *Testimony of Joyce Givens; DCBS Exhibit 2.*

2. On September 26, 2008, the DCBS issued a Substantiated Investigation Notification Letter to Joyce Givens. The letter stated, in pertinent part, as follows:

> The factual basis for the finding of abuse or neglect (*KRS 600.020(1)* ) is as follows:
>
> *A preponderance of the evidence suggests that you neglected [C.B.] in that you did [not] appropriately supervise her in administering medications timely and daily. Therefore, [C.B.] did not take medications as .prescribed. In addition, leading to possible rejection of her Kidney [sic] and loss of certain function in the Kidney. [sic].*[2]

3. C.B. was placed in Ms. Givens' foster home in April of 2008. She remained there for approximately two months. C.B. had been the recipient of a kidney transplant in 2004. Before the transplant she had suffered kidney failure and required home dialysis approxi-

---

1. Senior Judge Sheila R. Isaac sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

2. The following footnote appears in this part of the recommended order:

   The Substantiated Investigation Notification Letter does not specify whether the facts alleged involved abuse or neglect, however, the DCBS' witness, Rebecca Strouse, testified that the substantiation was made for neglect. Neither was the applicable provision of *KRS 600.020(1)* specified in the letter or through testimony, but the allegation and evidence presented are indicative of a lack of adequate supervision. *KRS 600.020(1)(h); DCBS Exhibit 2.*

mately twelve hours each day. The donor was her biological father. C.B. previously resided with her biological mother from whose home she was removed. Immediately prior to her placement with Ms. Givens, C.B. resided with her uncle and his family. C.B. had a history of noncompliance with her medication routine of which Ms. Givens testified she [was] not informed. *Testimony of Joyce Givens; Testimony of C.B.; DCBS Exhibit 2.*

4. C.B. was prescribed a number of medications to prevent rejection of her transplanted kidney. Ms. Givens testified that nobody explained to her the potential consequences of C.B.'s failure to take her medications. C.B. took approximately eight pills, both at 7:00 a.m. and 7:00 p.m. The medication was stored in a locked box, to which C.B. and Ms. Givens each had keys. Additionally, Ms. Givens was required to maintain a log regarding the administering of C.B.'s medication. A nurse visited monthly to review the log and otherwise monitor C.B.'s progress and condition. *Testimony of Joyce Givens; DCBS Exhibit 2; Testimony of C.B.*

5. Ms. Givens testified that she had not had foster children with serious medical conditions in her home prior to T.S. and C.B. Ms. Givens stated that C.B. was not designated a medically fragile child at the time she was placed in her home. In February 2008, Ms. Givens had completed the necessary training for approval to operate a medically fragile foster home, but had not yet been certified at the time of C.B.'s placement. T.S., who was already residing with Ms. Givens at the time of C.B.'s arrival, was designated a medically fragile child and took daily medication. Because T.S. was seventeen years old and preparing for independent living, she was permitted to manage her own medication. *Testimony of Joyce Givens; DCBS Exhibit 2.*

6. Ms. Givens acknowledged that C.B. did not have a serious attitude regarding her medical condition. She stated that C.B. asserted that she could always get another kidney from her father if anything went wrong with the one he had already donated. Ms. Givens initially filled C.B.'s pill box, administered the medication, and maintained the log. In June, however, Ms. Givens relinquished these responsibilities to C.B. *Testimony of Joyce Givens.*

7. C.B. testified that she often forgot to take her medication, particularly in the morning when she generally slept-in. Nonetheless, she completed the log as if she had. When asked by Ms. Givens whether she had taken her medication, she lied and said she had. C.B. additionally informed the nurse that she was compliant with her medication routine, although she knew it was untrue. C.B. was aware that the purpose of her medication was to keep the transplanted kidney stable and prevent rejection and was aware of the consequences of noncompliance. *Testimony of C.B.*

8. During a medical visit in late June 2008, blood tests revealed that the kidney was not functioning properly and C.B. was hospitalized for approximately a week. At that time, it came to light that she had been non-compliant with her medication routine. C.B. did not lose her kidney, but failure to take her medication placed her at increased risk for kidney rejection or failure. Her treating physician stated that if C.B. were to lose this kidney because of non-compliance with her medication routine, she would not receive priority upon her return to the donor list. *DCBS Exhibit 2; Testimony of C.B.; Testimony of Rebecca Strouse; Testimony of Joyce Givens.*

9. C.B. was removed from Ms. Givens['] home after her release from the hospital. Ms. Givens expressed remorse for the incident and stated that she would do things differently if they could be done over. She stated that she was a single parent and was working three jobs at that time. She further stated that C.B. was a dramatic child who was difficult to manage and was in frequent trouble at school. Ms. Givens described the situation as overwhelming. *Testimony of Joyce Givens.*

10. Rebecca Strouse investigated the incident for the DCBS. Ms. Strouse concluded that Ms. Givens' conduct constituted neglect of C.B. Ms. Strouse testified that Ms. Givens exercised insufficient oversight of C.B.'s medication routine by allowing her a key to the pill box, failing to supervise C.B. in taking her medications, and permitting C.B. to maintain the medication log herself. Ms. Givens['] failure to properly monitor C.B.'s medication routine brought about a potentially life-threatening situation and placed C.B. at risk of losing her transplanted kidney. *Testimony of Rebecca Strouse.*

## CONCLUSIONS OF LAW

. . . .

6. There are no material facts in dispute in this case. It is undisputed that C.B. was hospitalized in late June of 2008 as a result of failure to comply with the medication routine necessary to sustain function and prevent rejection of her transplanted kidney. It is further undisputed that Ms. Givens delegated her own responsibility of administering medication and maintaining the required medication log to C.B. herself. As a result, Ms. Givens was unaware that C.B. was not taking her medication.

7. As a fifteen year old, it would be hoped that C.B. would have been capable of understanding the importance of taking her medication as prescribed and shouldering the responsibility to do so, however, this was not the case. Ms. Givens herself testified that C.B. did not have [a] serious attitude with regards to taking her medication, therefore it is all the more a matter of concern that she would abandon all direct oversight of C.B.'s medication routine, even to the point of allowing C.B. to maintain the medication log herself.

8. More rigorous supervision would have prevented the health crisis that occurred. Instead, C.B. was placed in a potentially life-threatening situation. A preponderance of the evidence of record supports a finding that Ms. Givens' supervision of C.B. was inadequate to provide for her well-being and constituted neglect pursuant to *KRS 600.020(1)(h).* Therefore, the Cabinet's decision must be affirmed.

## *RECOMMENDED ORDER*

This decision **RECOMMENDS** that the September 26, 2008, substantiation of neglect against Joyce Givens be **AFFIRMED** and that her name be placed on the central registry of those who have abused or neglected children.[3]

---

**3.** A "substantiated allegation" of neglect carries no criminal penalties, and merely indicates a finding by the Cabinet that it is more likely than not that the accused abused or neglected a child. *See* 922 Kentucky Administrative Regulation (KAR) 1:330 § 1(11). However, if the Cabinet affirms that an allegation is substantiated by a preponderance of the evidence, then the accused's name is filed on a central registry of individuals for whom abuse allegations have been substantiated, and remains on that registry for a minimum of seven years. *See generally,* 922 KAR 1:470.

*EXCEPTIONS   AND   APPEAL
RIGHTS*

Pursuant to *KRS 13B.110,* each party may file written exceptions objecting to any part of this Recommended Order with the Commissioner. Any written exceptions to this Recommended Order must be filed with the Commissioner, Department for Community Based Services, Cabinet for Health and Family Services, 275 E. Main Street, 3W–A, Frankfort, KY 40621, by the close of business fifteen (15) days from the date this Recommended Order was mailed. The parties may appeal a Final Order in accordance with *KRS 13B.140(1),* which provides that a party appealing a Final Order must file a petition in the proper Circuit Court with venue within thirty (30) days after the Final Order is mailed or delivered to that party. If no other law provides for where an appeal must be filed, then a party may file an appeal petition in the Franklin Circuit Court, or in the Circuit Court of the county in which the party appealing resides or operates a place of business.

On July 9, 2009, the Commissioner of DCBS received the following written statement from Givens:

I Joyce Givens is [sic] objecting to the order with the Commissioner that the finding be reversed! I will file a petition in Circuit Court.

On July 13, 2009, the Commissioner of DCBS entered the Cabinet's final order in this matter. The Cabinet's final order fully adopted the hearing officer's recommended order.

During the administrative proceedings, Givens represented herself *pro se.* How-ever, Givens retained counsel to timely petition the Fayette Circuit Court for review. In her petition, Givens did not attack the constitutionality of any statute or regulation the Cabinet had applied against her in the underlying proceedings. Instead, Givens contended that it was "unconstitutional" for the Cabinet to enforce those rules against her under the circumstances of this case. She argued, first, that she was entitled to rescind the contract she had entered with the Cabinet that gave rise to her duties as C.B.'s foster parent and that the Cabinet was therefore precluded from substantiating her alleged neglect of C.B. based upon those duties.

In support, Givens pointed to the parts of the recommended order reflecting her testimony that: 1) the Cabinet had not informed her that C.B. had a history of failing to take medications; 2) the Cabinet had not informed her that C.B. routinely lied about taking medications; and 3) the Cabinet had not informed her of the consequences if C.B. did not take those medications. In her words, Givens contended that the Cabinet's hearing officer had failed to "connect the dots" of her testimony and consider, *sua sponte,* whether the Cabinet had concealed C.B.'s pertinent medical history from Givens to fraudulently induce Givens to accept C.B. as a foster child. Givens further alleged that the investigation of the neglect allegation, conducted by the Cabinet's Department for Community Based Services (DCBS), was retaliation for a report Givens had previously made with the Cabinet regarding a Cabinet social worker's failure to attend monthly nursing meetings regarding one of Givens' other foster children.[4,5]

Second, Givens asserted that the Cabinet's hearing officer had engaged in sever-

---

4. Givens provides no citation to any part of the record supporting that she filed such a report, and the record provides nothing in support of this contention beyond Givens'

statement to this effect in her petition for review.

5. Givens did not classify her theory with any specific label, but it is apparent from her

al acts constituting fraud and misconduct, and that, as a consequence, the circuit court was permitted to rely upon evidence outside the administrative record, try the merits of her estoppel argument, and, based upon the circuit court's findings, either reverse the Cabinet's final order or remand the matter back to the Cabinet for further proceedings. In support of this proposition, Givens quoted the portion of KRS 13B.150(1), which provides that "Review of a final order [of an administrative agency] shall be conducted by the court without a jury and shall be confined to the record, unless there is fraud or misconduct involving a party engaged in administration of this chapter...."

As to what Givens believed the Cabinet's hearing officer had done to constitute fraud or misconduct, Givens asserted that the Cabinet's hearing officer: 1) failed to object, on Givens' behalf, to leading ques-tions or hearsay testimony presented by the DCBS during the administrative proceedings; 2) failed to assemble a list of witnesses, subpoena those witnesses, and call those witnesses to testify during the administrative proceedings on behalf of Givens' defense; 3) failed to assemble other forms of exculpatory evidence and introduce that evidence during those proceedings, also on behalf of Givens' defense; 4) allegedly asked Givens only one question during the administrative hearing; 5) failed to advise Givens, prior to the hearing, that Givens had the right to be represented by counsel, to call witnesses on her own behalf, and to ask the agency to reschedule the date of the administrative hearing; and 6) was incapable of impartially deciding the underlying matter because the hearing officer and DCBS were both a part of the same agency.

However, on October 13, 2009, the circuit court dismissed Givens' petition. The

---

pleadings before the circuit court that her various points and contentions regarding fraud and rescission of contract coalesce into an affirmative defense of "equitable estoppel." *See, e.g., Fluke Corporation v. LeMaster,* 306 S.W.3d 55, 62 (Ky.2010):

Under Kentucky law, equitable estoppel requires both a material misrepresentation by one party and reliance by the other party: The essential elements of equitable estoppel are[:] (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.
(Note omitted.)

In exceptional circumstances, Kentucky recognizes that equitable estoppel can be applied against a state agency, such as the Cabinet, and can be used to estop an administrative agency from performing its statutory duties. *See Board of Trustees, Kentucky Retirement Systems v. Grant,* 257 S.W.3d 591, 594–5 (Ky.App.2008). However, *Grant* also provides that "[T]he existence of an equitable estoppel claim is a question of fact. The determination of that fact is first the responsibility of the hearing officer, KRS 13B.090(1), .110(1), and then the Board [or Agency Head]. KRS 13B.120(2), (3). We cannot set aside those findings lightly. KRS 13B.150(2)." *Id.* at 595. *Grant* further provides that "Prior to remanding a case for failure to make a finding of fact on an essential issue, we are required to determine whether [the appellant] preserved the issue in accordance with KRS 13B.140." (Citing *Rapier v. Philpot,* 130 S.W.3d 560, 563–64 (Ky. 2004)).

court affirmed the Cabinet's decision after determining that Givens had failed to file exceptions capable of preserving any issue for judicial review.

Givens moved the circuit court to alter, amend, or vacate its October 13, 2009 order, per Kentucky Rule of Civil Procedure (CR) 59.05. There, she argued that 1) the July 9, 2009 statement she submitted to the DCBS Commissioner qualified as an exception sufficient to preserve her estoppel argument; 2) even if her July 9, 2009 statement did not sufficiently preserve her estoppel argument, the General Assembly did not intend for the filing of exceptions, within the context of KRS 13B administrative proceedings, to be a prerequisite for preserving error for judicial review; 3) the circuit court could nevertheless review her argument because the hearing officer's recommended order failed to properly advise her of her exception rights; 4) the circuit court could still review her argument under the palpable error standard of CR 61.02; or, failing that, 5) the circuit court could review her argument because, as she alleged, the administrative proceedings were tainted by the Cabinet hearing officer's fraud and misconduct.

Also in that motion, and for the first time, Givens argued that "[The Cabinet's] final order placing [Givens'] name on the central registry of those who have abused or neglected children is unconstitutionally cruel and unusual punishment."

In a January 11, 2010 order in response to Givens' motion, the circuit court reaffirmed that Givens' July 9, 2009 statement failed to preserve any error for its review. This appeal followed.

## II. ANALYSIS

On appeal, Givens restates each of the arguments she posed before the circuit court, listed above. Each of Givens' arguments is directed to one common theme:

the legal significance of filing exceptions to a recommended order of a hearing officer in an administrative proceeding governed by KRS 13B.005–13B.170. Thus, before we delve into the substance of her arguments, it is necessary to review the relevant provisions of those statutes, and discuss what an "exception" is.

Notably, KRS 13B *et seq.* does not provide an explanation or definition of the term "exceptions." That term, as it is used in those provisions, has been the subject of further interpretation and explanation by decisions of our courts, particularly *Rapier v. Philpot*, 130 S.W.3d 560, 563–4 (Ky.2004). There, the Supreme Court of Kentucky stated:

Under Chapter 13B, the filing of exceptions provides the means for preserving and identifying issues for review by the agency head. In turn, filing exceptions is necessary to preserve issues for further judicial review. *Cf. Eiland v. Ferrell*, Ky., 937 S.W.2d 713, 716 (1997) (failure to file objections to a domestic relations commissioner's report adopted by the trial court precluded challenging, on appeal, whether the trial court's order was supported by sufficient evidence). Under Kentucky law, this rule of preservation precludes judicial review of any part of the recommended order not excepted to *and* adopted in the final order. *Cf. United States v. Central Bank & Trust Co.*, Ky., 511 S.W.2d 212, 214 (1974). (The failure to file written objections to a commissioner's report precluded aggrieved party from "questioning on appeal the action of the circuit court in confirming the commissioner's [report].") Thus, when a party fails to file exceptions, the issues the party can raise on judicial review under KRS 13B.140 are limited to those findings and conclusions contained in the agency head's final order that differ from those

contained in the hearing officer's recommended order.

*Rapier* provides one of the more succinct explanations of the function that an "exception" serves within the context of KRS 13B *et seq.* *Rapier* also emphasizes that the purpose behind filing exceptions within the meaning of those statutes is the same as raising an objection at a trial: doing so preserves alleged mistakes of fact or errors of law for further review. The legal significance of filing exceptions in general is, however, a subject that Kentucky jurisprudence addressed long before *Rapier.* In *Collins v. Conley,* 216 Ky. 582, 288 S.W. 316 (1926), for example, the former Court of Appeals described the consequence of a party's failure to file exceptions to a master commissioner's report:

It is earnestly insisted that the master commissioner's report is clearly unsupported by the evidence taken by him, but back of this is the question, Can Collins complain of the commissioner's report in this court when he filed no exceptions to the report in the circuit court? In 21 C.J. 618, the rule is thus stated:

"As a general proposition in order to obtain a review of the findings or recommendations of a master specific exceptions to his report must be filed. All findings of fact not excepted to will be accepted as true by the court, and the parties to the suit are concluded thereby."

To the same effect is 10 R.C.L. p. 517: "When there is in the master's report a mistake or error which can be pointed out in the report itself or in any document contained in the record, the party aggrieved should resort to the use of exceptions, since findings of the master on questions of fact are always binding where no exceptions are taken, or where they are improperly taken, and only

such matters of law and of fact as are brought before the court by exceptions will be reviewed."

So far as we have seen, the authorities are clear and consistent on this question. The reason for the rule is that the appellate court simply reviews the action of the circuit court. An exception to the report was necessary to require the circuit court to review the findings of the commissioner; for the court properly assumed that the commissioner's report was correct when it was not complained of. For the parties to allow the commissioner's report to be confirmed without exception and then for the first time to present their objections to the report in this court, by way of a brief, would be to require this court in the first instance to try the merits of the case when there had been no trial in the circuit court. This cannot be done.

*Id.* at 317.

*Collins* also underscores that exceptions must be *specific.* *Id.* A clear, concise statement of a party's objection or objections obviates the need for the agency head or the Court, on subsequent judicial review, to guess at, or decipher, the party's intended argument regarding error. For this reason, even properly filed exceptions, containing objections "couched in general terms with no specification of any concrete or particular error . . . are insufficient to authorize us or the court below to consider or to disturb the verdict for any alleged error, though valid, that may be argued as embraced in such general language." *Challinor v. Axton,* 246 Ky. 76, 54 S.W.2d 600, 601 (1932).

*Challinor* itself cites several examples of objections that are too general to qualify as preservations of error. These include: "irregularity in the proceedings of the court and in the prevailing party, by which the plaintiff was prevented from having a

fair trial"; "error of law occurring at the trial"; and, "the verdict was contrary to law." *Id.; see also Couch v. Natural Res. & Envtl. Prot. Cabinet,* 986 S.W.2d 158, 161 (Ky.1999) (citing *Challinor* in the context of exceptions filed in administrative proceedings; holding that a statement to the effect that the hearing officer's findings were contrary to "the law and to the facts, to KRS Chapter 350, and to the administrative regulations issued pursuant to KRS Chapter 350," was insufficient to preserve any error for judicial review).

On the other hand, an example of an exception that adequately preserved a contention of error and provided a basis for remand can be found in *Grant,* 257 S.W.3d at 596. That exception, as a panel of this Court described it, was simply to the effect that the complaining party had raised the defense of equitable estoppel before the hearing officer, and that the hearing officer had failed to address it. *Id.* This example is particularly relevant to the case at bar because equitable estoppel is precisely the defense that Givens purports to have asserted before the Cabinet's hearing officer and, similarly, Givens believes that the hearing officer erred by not addressing it, or, in her words, by failing to "connect the dots."

■ With this in mind, we examine Givens' first argument: She believes that her July 9, 2009 statement adequately notified the Cabinet's agency head that she had raised the defense of equitable estoppel before the hearing officer, and that the hearing officer had erred by failing to consider it.[6] Her July 9, 2009 statement reads:

I Joyce Givens is [sic] objecting to the order with the Commissioner that the finding be reversed! I will file a petition in Circuit Court.

We disagree that this statement was capable of preserving any defense, let alone one regarding equitable estoppel. This statement specifies no particular error, and matches the examples cited in *Challinor* and *Couch,* as "couched in general terms with no specification of any concrete or particular error." *Challinor,* 54 S.W.2d at 601. Consequently, this statement is "insufficient to authorize us or the court below to consider or to disturb the verdict for any alleged error, though valid, that may be argued as embraced in such general language." *Id.*

In rebuttal, Givens urges that her July 9, 2009 statement should be "liberally construed" because she was representing herself *pro se* when she filed it before the Cabinet's agency head. We recognize that "*pro se* litigants are sometimes held to less stringent standards than lawyers in drafting formal pleadings." *Watkins v. Fannin,* 278 S.W.3d 637, 643 (Ky.App.2009) (citing *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). However, *pro se* litigants are still required to preserve error. *See Watkins,* 278 S.W.3d at 643 ("Kentucky courts still require *pro se* litigants to follow the Kentucky Rules of Civil Procedure."). And, to interpret Givens' July 9, 2009 statement to raise and preserve an issue regarding equitable estoppel would go beyond merely construing its existing language; doing so would require this Court to add language and meaning to it where neither exists.

Givens' second argument is that even if her July 9, 2009 statement did not sufficiently preserve her estoppel argument, the General Assembly did not intend for the filing of exceptions, within the context

---

**6.** As previously noted, equitable estoppel is a defense that must be preserved at the admin- istrative level. *Grant,* 257 S.W.3d at 595–6.

of KRS 13B administrative proceedings, to be a prerequisite for preserving error for judicial review. Therefore, she reasons that the Supreme Court of Kentucky placed an unintended meaning upon the word "exceptions," as it is used in KRS 13B *et seq.*, and thus violated the separation of powers doctrine. We disagree.

■ The General Assembly chose not to define "exceptions" when it enacted KRS 13B *et seq.* And, in that circumstance, "A universally accepted rule of statutory construction is that the General Assembly is presumed to know the status of the law and the constructions placed on it by the courts." *Butler v. Groce,* 880 S.W.2d 547, 550 (Ky.1994), J. Lambert dissenting (citing *Baker v. White,* 251 Ky. 691, 65 S.W.2d 1022 (1933); *Commonwealth, Dept. of Banking & Secur. v. Brown,* 605 S.W.2d 497 (Ky.1980)). *Collins,* quoted above, explored the legal construction of "exceptions" as early as 1926. The General Assembly chose to adopt that term, without further defining it, into the language of KRS 13B *et seq.* decades later. *Rapier* did nothing more than reassert the meaning of the term "exceptions" as illustrated by decades of Kentucky precedent. And, since *Rapier,* the General Assembly has done nothing to alter the meaning of that term.

In sum, there is no separation of powers violation in this instance because we presume that the General Assembly intended for our courts to treat the term "exceptions," within the context of KRS 13B *et seq.*, the same way that our courts have always treated that term.

■ Givens' third argument is that the circuit court could nevertheless review her argument because the hearing officer's recommended order failed to properly advise her of her exception rights. This argument also has no merit.

Pursuant to KRS 13B.110(1), a hearing officer's recommended order must include "a statement advising parties fully of their exception and appeal rights." KRS 13B.110(4) also provides each party fifteen days in which to file exceptions. In *Rapier,* the Supreme Court of Kentucky held that the following statement fully advised a litigant of his exception rights within the meaning of these provisions:

Any Exceptions and/or requests for Oral Arguments hereto shall be filed within fifteen (15) days hereof and any Response to Exceptions shall be filed with[in] five (5) days of the date the Exceptions are filed with the Board.

*Rapier,* 130 S.W.3d at 564.

In the case at bar, the hearing officer's recommended order contained just as much, if not more, of an explanation of Givens' exception rights. Therefore, the notice Givens was provided was adequate as a matter of law.

■ Givens' fourth argument is that the circuit court could have reviewed her argument under the palpable error standard of CR 61.02. In support of this proposition, she relies upon *Herndon v. Herndon,* 139 S.W.3d 822 (Ky.2004), which held that a court could review the report of a domestic commissioner for palpable error. However, *Herndon* involved appellate review of judicial, rather than administrative, proceedings. Moreover, although the objections to a domestic relations or other report filed in a judicial proceeding generally are waived unless timely raised before the trial court, the trial court in fact may consider an untimely objection or may conduct a review in order to prevent manifest injustice. *Eiland v. Ferrell,* 937 S.W.2d 713, 716–17 (Ky.1997); *see also* CR 61.02; *Herndon,* 139 S.W.3d at 823, 826–27.

■ The duty of a trial court in an administrative proceeding, by contrast, is

not to interpret the rules of the Court of Justice. Instead, the court must "interpret procedural statutes and give effect to legislative intent[.]" *Herndon*, 139 S.W.3d at 826. A party to an administrative hearing, therefore, must except to a recommended order as required by statute and, despite Givens' argument to the contrary, judicial review of the final order specifically is limited to a review of any factual or legal "findings and conclusions" which differ from those which were recommended. *Rapier*, 130 S.W.3d at 564; *see also* KRS 13B.140. Because Givens filed no exceptions capable of preserving any error regarding the hearing officer's recommended order and the Cabinet adopted the recommended order without change, it follows that no issues existed for the trial court's consideration.

■ Givens' fifth argument is that the circuit court could review her argument because, as she alleged, the administrative proceedings were tainted by the Cabinet hearing officer's fraud and misconduct. In support, she restates the same instances of the hearing officer's alleged misconduct as she did before the circuit court.

This argument is also without merit. By not filing any specific exceptions, Givens failed to preserve or provide notice of the factual findings and conclusion to which she objected. Whether the hearing officer acted fraudulently had no bearing on Givens' disagreements with and objections to the hearing officer's rulings. In this light, the specific acts of the hearing officer that Givens classifies as fraud and misconduct are irrelevant to this appeal.

Moreover, Givens' various arguments point to nothing indicative or supportive of her allegations that the hearing officer acted fraudulently or committed misconduct. Givens provides no citation to any evidence of record supporting that any of these alleged acts occurred. Similarly,

Givens presents no authority supporting that any of these alleged acts could constitute misconduct. Indeed, making evidentiary objections and preparing evidence for a defense are not the responsibility of a hearing officer. They are the responsibility of an attorney, *pro se* or otherwise.

Givens' assertion that the hearing officer failed to advise her of her rights to be represented by counsel and to call witnesses on her behalf is also directly contradicted by the record. The record contains a "Notice of Scheduled Hearing," entered one month prior to the hearing date in this matter and sent to Givens, which extensively advised her of both of these rights. And, as to her contention that the hearing officer failed to tell her that she had a right to ask for the hearing to be rescheduled, the Notice also contained all of the hearing officer's relevant contact information. Givens makes no contention that she ever attempted to contact the hearing officer.

Finally, as to Givens' assertion that the hearing officer was unable to impartially decide the underlying matter because both the hearing officer and DCBS were part of the same agency, we would respond by stating that this, in and of itself, is insufficient to demonstrate bias. "Without a showing to the contrary, state administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' " *Withrow v. Larkin*, 421 U.S. 35, 55, 95 S.Ct. 1456, 1468, 43 L.Ed.2d 712 (1975) (quoting *United States v. Morgan*, 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941)).

Finally, Givens again argues, as she did for the first time in her CR 59.05 motion to vacate, that the Cabinet's final order authorizing the placing of her name on the central registry of those who have abused

or neglected children is cruel and unusual punishment. She further argues that the trial court erred when it failed to address this argument in its final order.

Givens' argument, as well as the majority of her brief, is couched in terms of constitutionality. Curiously, Givens has strictly confined her arguments to the constitutionality of the Cabinet's and circuit court's respective final orders; she has never challenged the constitutionality of any regulation or statute, let alone any regulation or statute authorizing the existence of the Central Registry itself.

■ Regardless, however, the circuit court was entitled to disregard this argument. "A party cannot invoke [CR 59.05] to raise arguments and introduce evidence that could and should have been presented during the proceedings before the entry of the judgment." *Hopkins v. Ratliff,* 957 S.W.2d 300, 301 (Ky.App.1997) (citing 7 Kurt A. Philipps, Jr., *Kentucky Practice,* CR 59.05, cmt. 6 (5th ed.1995)). And without question Givens was aware, long before the circuit court entered its October 13, 2009 order affirming the Cabinet's decision, that her name would be placed on the Central Registry.

### III. CONCLUSION

For these reasons, the order of the Fayette Circuit Court is AFFIRMED.

ALL CONCUR.