RENDERED: OCTOBER 22, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0961-MR

ALVIN D. MILLER                                         APPELLANT

v.             APPEAL FROM WASHINGTON CIRCUIT COURT
HONORABLE ALLAN RAY BERTRAM, JUDGE
ACTION NOS. 15-CR-00008 AND 15-CR-00009

COMMONWEALTH OF KENTUCKY                   APPELLEE

AND

NO. 2020-CA-0963-MR

ALVIN D. MILLER                                         APPELLANT

v.             APPEAL FROM MARION CIRCUIT COURT
HONORABLE ALLAN RAY BERTRAM, JUDGE
ACTION NOS. 15-CR-00064, 15-CR-00065, 15-CR-00155, 15-CR-00156, 15-CR-00157, 15-CR-00158, 15-CR-00159, 15-CR-00160, 15-CR-00161, AND 15-CR-00162

COMMONWEALTH OF KENTUCKY                   APPELLEE

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND JONES, JUDGES.

JONES, JUDGE: Alvin D. Miller appeals from the Washington and Marion Circuit Courts' judgments and sentences of imprisonment, following the courts' orders revoking his probation. After reviewing the record, and being otherwise sufficiently advised, we affirm.

## I. BACKGROUND

The facts of this case arise out of a series of guilty pleas Miller negotiated with the Commonwealth in 2015 and 2016 for offenses he committed in Washington and Marion Counties. On August 19, 2015, Miller pleaded guilty to receiving stolen property,[1] second-degree fleeing and evading,[2] and first-degree wanton endangerment[3] in Washington Circuit Nos. 15-CR-00008 and 15-CR-00009. The trial court accepted Miller's guilty pleas and subsequently sentenced him to five years' imprisonment probated for five years, with no restitution imposed.

---

[1] Kentucky Revised Statute (KRS) 514.110(3)(b), a Class D felony.

[2] KRS 520.100(1)(a), a Class A misdemeanor.

[3] KRS 508.060, a Class D felony.

That same day, Miller also pleaded guilty to theft by unlawful taking of a firearm[4] and possession of a firearm by a convicted felon[5] in Marion Circuit Nos. 15-CR-00064 and 15-CR-00065. The trial court accepted the pleas and sentenced Miller to five years' imprisonment probated for five years, with no restitution imposed. The trial court ordered this sentence to run concurrently with the five-year sentence imposed by the Washington Circuit Court (15-CR-00008 and 15-CR-00009).

In 2016, Miller was indicted for additional offenses in Marion County which resulted in another series of negotiated guilty pleas. On July 14, 2016, Miller pleaded guilty to two counts of theft by unlawful taking of a firearm, two counts of possession of a firearm by a convicted felon, and third-degree burglary[6] in Marion Circuit Nos. 15-CR-00155, 15-CR-00156, 15-CR-00157, and 15-CR-00158. The trial court accepted the pleas and sentenced Miller to another five-year term of imprisonment probated for five years which was to run concurrently with his sentence in Marion Circuit Nos. 15-CR-00064 and 15-CR-00065. The trial court also ordered Miller to pay restitution of $1,000.00 and a fee of $50.00.

---

[4] KRS 514.030, a Class D felony.

[5] KRS 527.040(2)(a), a Class D felony.

[6] KRS 511.040, a Class D felony.

Finally, on July 14, 2016, Miller also pleaded guilty to two counts of theft by unlawful taking, two counts of third-degree burglary, and possession of a firearm by a convicted felon in Marion Circuit Nos. 15-CR-00159, 15-CR-00160, 15-CR-00161, and 15-CR-00162. Once again, the trial court accepted Miller's pleas and sentenced him to another five-year term of imprisonment probated for five years. The trial court ordered this sentence to run concurrently with Marion Circuit Nos. 15-CR-00064 and 15-CR-00065, but consecutively with his sentence in Marion Circuit Nos. 15-CR-00155, 15-CR-00156, 15-CR-00157, and 15-CR-00158. The trial court did not impose restitution for these offenses.

After successfully serving his probation for a few years, Miller violated probation when he was arrested for a new felony offense in January 2019. The Commonwealth moved to revoke probation in all of Miller's cases. In a hearing held in open court on April 11, 2019, Miller accepted the Commonwealth's plea for an alternative sanction in which he would serve three hundred sixty-five days of incarceration. Unfortunately, the written record is not explicit about Miller's plea agreement for this sanction, specifically his probationary status following his release. The handwritten portion of the trial court's one-page order states: "Alternate sentence – state time to serve 365 days state time beginning 2/14/19 . . . review restitution owed on 5/21/2020 at 1:00 pm." (Record (R.) for Marion Circuit No. 15-CR-00064 at 74.)

The video record of the April 11th hearing is slightly more helpful in discerning the full terms of Miller's plea arrangement. Miller's counsel explains to him that, per the agreement with the Commonwealth, he would serve three hundred sixty-five days and then "he would be done." However, in further discussion with the trial court, counsel admitted Miller would be required to pay outstanding restitution first, and that the probation term would be "hanging over his head" until this restitution was paid. Counsel then told Miller that he would not have to report to probation and parole after the term of incarceration, but he would have to pay restitution, and he could still be found in violation of his probation until he paid the restitution in full.

The trial court accepted counsel's interpretation of the plea arrangement, noting Miller owed $1,000.00 restitution in one of his probated cases, before stating as follows: "So when he is finished, he will be released from probation and parole. He will just need to pay restitution and then be released from probation." The trial court set the review date in May 2020 because it wished to give Miller ninety days, starting from his release in February 2020, to gain employment and make the required restitution payments.

Miller served the three hundred sixty-five days and was released from custody sometime in February of 2020. However, before the restitution review date arrived, Miller was arrested in connection with a shooting that occurred in late

April of 2020. Ultimately, Miller was charged with first-degree assault. The Commonwealth alleged that Miller shot and injured a man who was sitting on his porch and then fled into the woods. Following Miller's arrest on the new charge, the Commonwealth once again moved to revoke Miller's probation. In a revocation hearing held on May 21, 2020, the Commonwealth presented testimony from the investigating officer regarding Miller's involvement in the shooting, as well as testimony from a probation and parole officer who was familiar with Miller's probation history. The probation officer testified that Miller had served his alternative prison sanction and was released on February 4, 2020. The probation officer also testified that Miller had committed about eight violations since being granted probation in October 2015, and that Miller was no longer able to be supervised because probation and parole had exhausted all options in his case. Miller's counsel argued for leniency and pointed out that Miller was entitled to a presumption of innocence because he had not yet been convicted on this new charge.

The trial court discussed Miller's pending charge and found that the Commonwealth presented enough to show Miller committed the charged offense by a preponderance of the evidence. The trial court explained that the evidence showed that it was more likely than not that Miller, a convicted felon, was in possession of a handgun. The trial court noted that Miller admitted being present

at the home of the shooting victim and a wrecked vehicle belonging to Miller's mother was found near the location of the shooting. Furthermore, there was firearm ammunition matching that used in the shooting found near the wrecked vehicle, and the victim identified Miller as the shooter in a photographic lineup. Based on these factors, the trial court found there was sufficient evidence of a violation and revoked Miller's probation in all of his outstanding cases. On May 21, 2020, in its form order revoking probation, the trial court indicated it had considered the requirements of KRS 439.3106 and found that Miller is a "significant risk to . . . [the] community at large" and "cannot be appropriately managed in community [sic], shown by new charges." (R. for Marion Circuit No. 15-CR-00064 at 84.)

Miller's counsel thereafter filed a CR[7] 59.05 motion to alter, amend, or vacate the revocation order, arguing for the first time that Miller was no longer on probation under the terms of the plea agreement reached with the Commonwealth during the April 11, 2019 hearing. Miller's counsel admitted he had only watched the April 2019 hearing video after the present revocation hearing had taken place. Based on the video, counsel now asserted Miller's completion of the alternative prison-time sanction meant he had completed probation. In a

---

[7] Kentucky Rules of Civil Procedure.

-7-

hearing on the CR 59.05 motion, the trial court[8] disagreed with Miller's interpretation, finding that the terms of the agreement required Miller to remain on probation until the restitution was paid. The trial court then denied the CR 59.05 motion. This appeal followed.

## II. ANALYSIS

Miller presents two arguments on appeal. First, he contends the trial court erred when it failed to make sufficient findings to revoke his probation under KRS 439.3106. "A decision to revoke probation is reviewed for an abuse of discretion." *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014) (citing *Commonwealth v. Lopez*, 292 S.W.3d 878 (Ky. 2009)). "Under our abuse of discretion standard of review, we will disturb a ruling only upon finding that 'the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Id*. (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)). "Put another way, we will not hold a trial court to have abused its discretion unless its decision cannot be located within the range of permissible decisions allowed by a correct application of the facts to the law." *McClure v.*

---

[8] The trial court judge during most of these proceedings, up through the final revocation hearing, was the Honorable Allan Ray Bertram. Judge Bertram was succeeded by the Honorable Kaelin G. Reed, who ruled on Miller's CR 59.05 motion. Our caption reflects Judge Bertram and not Judge Reed because, properly speaking, this appeal is from Judge Bertram's revocation order. "Orders denying CR 59.05 relief are interlocutory, *i.e.*, non-final and non-appealable[.]" *Hoffman v. Hoffman*, 500 S.W.3d 234, 236 (Ky. App. 2016) (internal quotation marks omitted).

*Commonwealth*, 457 S.W.3d 728, 730 (Ky. App. 2015) (citing *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004)).

Miller specifically argues the trial court "failed to cite evidence that [he] constituted a significant risk to the community at large." (Appellant's Brief at 10.) A trial court traditionally has "broad discretion in overseeing a defendant's probation, including any decision to revoke[.]" *Andrews*, 448 S.W.3d at 777. This traditional deference was somewhat qualified when, "[i]n 2011, the Kentucky General Assembly enacted the Public Safety and Offender Accountability Act, commonly referred to as House Bill 463 (HB 463)." *Id*. at 776 (internal quotation marks omitted). Included as part of this legislation, KRS 439.3106(1) provides as follows:

> Supervised individuals shall be subject to . . . [v]iolation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community[.]

A trial court must make both statutory findings, regarding risk and the inability to be managed in the community, before revoking probation. "[W]hile trial courts retain discretion in revoking probation, consideration of the criteria provided in KRS 439.3106 is a mandatory prerequisite to revocation." *Richardson v. Commonwealth*, 494 S.W.3d 495, 498 (Ky. App. 2015). The essential questions

are "[w]hether the evidence of record supported the requisite findings that [the appellant] was a significant risk to, and unmanageable within, his community; and whether the trial court, in fact, made those requisite findings." *McClure*, 457 S.W.3d at 732.

The trial court spent a significant amount of time in the revocation hearing going over the evidence showing Miller was likely involved in a shooting leading to a first-degree assault charge. In addition, in its form order revoking probation, the trial court stated it explicitly considered the criteria under KRS 439.3106 before finding Miller posed a significant risk to the community at large and could not be appropriately managed in the community. In his brief, Miller asserts the trial court erred when it did not undertake any analysis to explain its findings, but he offers no legal support for this assertion. Indeed,

> [KRS 439.3106] requires a trial court to consider
> "whether a probationer's failure to abide by a condition
> poses a significant risk to prior victims or the community
> at large." *Andrews*[, 448 S.W.3d] at 776. Neither KRS
> 439.3106 nor *Andrews* require anything more than a
> finding to this effect supported by the evidence of record.
> The trial court complied with this requirement and it
> owed [the appellant] no further explanation.

*McClure*, 457 S.W.3d at 733. When reviewing the adequacy of the trial court's findings under KRS 439.3106, "we look to both the written and oral findings in conjunction with one another and not separately in a vacuum." *Commonwealth v.*

-10-

*Gilmore*, 587 S.W.3d 627, 630 (Ky. 2019). Ultimately, our task is to determine whether the evidence of record supports the trial court's conclusions. *Id.*

The evidence of record in this case was clear that probation and parole had offered assistance to Miller over the years, but he was unable to conform his conduct to the law. He had numerous positive drug screens, possessed firearms although he was prohibited by law from doing so, and incurred new charges. The trial court carefully considered the evidence related to the newest charge and found it sufficient to show that Miller possessed a firearm and a substantial amount of ammunition and was involved in shooting someone with a firearm. Miller's lengthy criminal history shows that he is not able to be managed effectively in the community. Likewise, his propensity to continue possessing and using firearms shows that he posed a risk to the community at large. For these reasons, we discern no error regarding the sufficiency of the evidence supporting the trial court's findings.

For his second issue, Miller contends the trial court erroneously revoked his probation in those cases for which he did *not* owe restitution, arguing he was no longer on probation for those cases following release from his alternative sanction. However, Miller admits he did not raise this issue until his CR 59.05 motion. "A party cannot invoke [CR 59.05] to raise arguments and introduce evidence that could and should have been presented during the

-11-

proceedings before the entry of the judgment." *Givens v. Commonwealth*, 359 S.W.3d 454, 466 (Ky. App. 2011) (citations omitted). *See also Gullion v. Gullion*, 163 S.W.3d 888, 893 (Ky. 2005); *Short v. City of Olive Hill*, 414 S.W.3d 433, 441 n.7 (Ky. App. 2013). We may affirm for this reason alone.

Furthermore, the best evidence in the record regarding Miller's alternative sanction agreement with the Commonwealth is the recording of the April 11, 2019 revocation hearing. In this hearing, Miller appears to acquiesce to an arrangement whereby he would remain on probation for all of his offenses until he paid restitution. As pointed out by the trial court, during the prior hearing, Miller's counsel explained to him in open court that while he would not have to check in with probation and parole, his probation on all his other sentences could be revoked until he paid his restitution. Miller acknowledged that he understood the agreement before the trial court entered an order. Miller did not appeal from the order with respect to whether it was proper given that restitution was only ordered in some of his other cases. Miller's failure to challenge the prior agreement at the time of its entry precludes him from doing so now. *Commonwealth v. Jennings*, 613 S.W.3d 14, 17 (Ky. 2020) (citations omitted) ("A probationer is required to challenge the offending provision at the time it is imposed.").

-12-

### III. Conclusion

For the foregoing reasons, we affirm the judgments revoking Miller's probation.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Steven Nathan Goens
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky